The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Brent Arnold HOPPER, Defendant–Appellant.

No. 08CA1767.

Colorado Court of Appeals, Div. II.

July 7, 2011.

---

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Brent Arnold Hopper, appeals the judgments of conviction entered on jury verdicts finding him guilty of two counts of possession of a controlled substance and two special offender sentencing counts. He also appeals the length of his mandatory parole term. We affirm but remand for correction of the mittimus regarding, inter alia, the length of mandatory parole.

## I. Background

In March 2007, the police stopped the vehicle defendant was driving to execute an arrest warrant for one of the two other men (i.e., Ryan Bowler and Rodney Putney) riding in the car. After the three men were removed from the vehicle, the police searched it, finding a rifle in the back seat; a sawed-off shotgun on the front floorboard; a handgun on the rear floorboard; drug paraphernalia (including spoons, cotton swabs, and syringes); and a bag of cocaine and a bag of methamphetamine, both under the driver's seat.

Defendant was charged, as pertinent here, with two counts of possession of a controlled substance, two special offender counts, and one count of possession of a dangerous weapon. He unsuccessfully moved to suppress the evidence seized from the vehicle on the basis that the police lacked the requisite grounds to stop the vehicle.

At his early 2008 trial, both Bowler and Putney denied putting the guns or drugs in the vehicle. According to them, at the time they were stopped, they were on their way to help defendant rob a woman who allegedly owed him money. Bowler related that, the previous night, the three men had discussed how drugs and guns would be involved in the robbery. Based on the evidence found in the vehicle and Bowler's and Putney's testimony, the People asserted that defendant was guilty either of directly possessing the guns and drugs or, alternatively, of being complicit in the others' possession of those items.

Defendant argued that, because Bowler and Putney had pending charges against them, they had a motivation to lie and blame him for their activities. He asserted that, unbeknownst to him, they had brought the illegal items into the vehicle and that, after he was removed from the vehicle, they repositioned those items to implicate him in their crimes. During his case-in-chief, defendant called Stanley Davis to testify that, while in jail, Bowler had "rant[ed] and rav[ed]" that the guns and drugs were his and that they had been thrown under defendant's seat so that defendant would "get stuck with it."

The jury acquitted defendant of possessing a deadly weapon but found him guilty of the remaining charges and special offender counts. Before sentencing, he filed a Crim. P. 33 motion for new trial based on newly discovered evidence, which the court denied after conducting a hearing. The court then sentenced defendant to sixteen years imprisonment and five years of mandatory parole.

## II. Suppression Ruling

■ Defendant contends that, because he and his companions were outside the vehicle, in police custody, at the time the vehicle was searched, and the police had no reason to believe that evidence related to the arrest would be found in the vehicle, the evidence seized during that search must be suppressed under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). We disagree.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460, 101 S.Ct. at 2864 (footnote omitted). In Colorado, *Belton* was understood as establishing a bright line test: if an occupant of a car was arrested, the passenger compartment of that vehicle could be searched. *See Perez v. People*, 231 P.3d 957, 960 (Colo.2010); *see also People v. Kirk*, 103 P.3d 918, 922 (Colo.2005) (*Belton* permits an officer to search the passenger

compartment of a vehicle even "after the suspect has been removed from the vehicle, [and] even when the suspect is away from the vehicle and safely within police custody at the time of the search").

In *Gant*, however, the United States Supreme Court rejected such a broad reading of *Belton* when it concluded that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723.

■ Perhaps because *Gant* was decided after his trial, defendant failed to contest the validity of the vehicle search in the trial court.[1] Ordinarily, we would not address a ground for suppressing evidence that was not presented to the trial court. *See, e.g., People v. Huynh*, 98 P.3d 907, 913 (Colo.App.2004) (declining to address argument not raised in suppression hearing); *People v. Rogers*, 68 P.3d 486, 490 (Colo.App.2002) (same); *People v. White*, 64 P.3d 864, 871 (Colo.App.2002) (same).

We need not determine, however, whether the nature of the *Gant* decision, combined with its timing relative to the date of the search or trial here, excused defendant from having to contest the validity of the vehicle search in the trial court.[2] Even assuming that the *Gant* issue is properly before us, we conclude that under the circumstances of this case, *Gant* does not provide defendant with a right to the relief he wants, that is, suppression of evidence.

In *Davis v. United States*, 564 U.S. ——, ——, 131 S.Ct. 2419, 2434, 180 L.Ed.2d 285 (2011), the United States Supreme Court held that the exclusionary rule did not apply where the vehicle search was conducted before *Gant* but in compliance with the applicable Eleventh Circuit Court of Appeal's interpretation of Belton which, as in Colorado, established a bright-line rule authorizing the search of a vehicle's passenger compartment incident to a recent occupant's arrest. The Court reasoned:

> It is one thing for the criminal "to go free because the constable has blundered." It is quite another to set the criminal free because the constable has scrupulously adhered to governing law. Excluding the evidence in such cases deters no police misconduct and imposes substantial social costs. We therefore hold that when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.

*Id.* at ——, 131 S.Ct. at 2434 (citation omitted) (quoting *People v. Defore*, 242 N.Y. 13, 150 N.E. 585, 587 (1926)).[3]

In the present case, defendant conceded in the trial court that the search of the vehicle was proper under the then applicable binding precedent of the Colorado Supreme Court.[4] Under *Davis*, then, he is not entitled to have the evidence seized from that search suppressed.

---

1. In the trial court, defendant argued only that the police lacked reasonable suspicion to stop the vehicle and, thus, the evidence was the fruit of an illegal stop.

2. In similar circumstances, some courts have refused to address the *Gant* issue, holding that, by failing to challenge the vehicle search in the trial court, the defendant waived it. *See United States v. Johnson*, 369 Fed.Appx. 551, 552 (5th Cir.2010); *State v. Horton*, 150 Idaho 300, 246 P.3d 673, 677 (Idaho Ct.App.2010); *Bishop v. State*, 308 S.W.3d 14, 19 (Tex.App.2009); *Johnson v. Commonwealth*, 2010 WL 606686 (Va.Ct. App. No. 0024–09–2, Feb. 23, 2010) (unpublished memorandum opinion). Others, however, address the *Gant* issue, holding that the defendant's failure to raise the issue in the trial court was

excusable. *See People v. Valdez*, 2009 WL 3089010 (Cal.Ct.App. No. B212713, Sept. 29, 2009) (unpublished opinion); *State v. Robinson*, 171 Wash.2d 292, 253 P.3d 84, 89 (2011).

3. *Davis* effectively overruled *People v. McCarty*, 229 P.3d 1041, 1045 (Colo.2010), in which the Colorado Supreme Court rejected the application of the good faith exception to the exclusionary rule to situations involving police reliance on pre–*Gant* case law.

4. At the suppression hearing, defendant stated, "I think that if the Court finds that [the officers] had the right to pull [the vehicle] over, then obviously the search is incident to the arrest of [an occupant] and then it falls into place as far as the law is concerned."

### III. Special Offender Interrogatories

■ Defendant also contends that the trial court erred in submitting to the jury two special offender interrogatories, neither of which included a culpable mental state element. Again, we disagree.

Over defendant's objection, the court submitted the following special interrogatory to the jury on the verdict forms for each of the drug counts:

> Do you find beyond a reasonable doubt that the defendant did use, display, possess or have available for use a deadly weapon while committing the offense of Possession of a Controlled Substance ... to wit: an SKS 7.62 X 39 rifle?

On appeal, defendant concedes that these interrogatories track the language of the applicable version of the special offender statute, and that version does not explicitly include any culpable mental state elements. *See* Ch. 71, sec. 1, § 18–18–407(1)(f), 1992 Colo. Sess. Laws 362; *cf.* § 18–18–407(1)(f), C.R.S.2010 (provision amended effective Aug. 11, 2010).[5] He asserts, however, that the relevant version of section 18–18–407(1)(f) implicitly requires a mens rea of knowingly and that the court's unwillingness to include such a mental state in the interrogatories was prejudicial error.

Our courts have rejected these same arguments, made with respect to other, analogous parts of the special offender statute. *See Whitaker v. People,* 48 P.3d 555, 560 (Colo.2002) (because the special offender statute does not create a substantive offense and does not contain a culpable mental state element in its importation subsection, the "special offender statute's importation [cir-cumstance] does not include a mens rea requirement"); *People v. Ramirez,* 997 P.2d 1200, 1205, 1208 (Colo.App.1999) (because subsection (1)(e) of the special offender statute does not require a mens rea element, once a jury has determined that a defendant possessed the mental state required for conviction of the underlying substantive offense, an enhanced sentence under the relevant version of section 18–18–407(1)(e) "must be imposed whether or not the defendant fully knew of the circumstances leading to the special offender finding"), *aff'd,* 43 P.3d 611 (Colo.2001).

Contrary to defendant's assertion, we perceive no pertinent linguistic or structural difference between the special offender provision at issue here, former section 18–18–407(1)(f), and those at issue in *Whitaker* and *Ramirez*[6] to warrant a result different from those cases.

In so concluding, we reject defendant's assertion that, because the provision at issue does not concern an act related to the drug which forms the basis of the crime, but rather, concerns the presence of an item (a deadly weapon) wholly different from the drug, it is materially different from the other two provisions. According to defendant, imposing an enhanced sentence is unfair when the defendant, because he or she did not own the deadly weapon or place it in the vehicle, may have been totally unaware of its presence in the vehicle.

Such a result may be harsh. However, given the well-known potential for danger that exists whenever drugs *and* deadly weapons are present[7], the General Assembly

---

5. In its current form, section 18–18–407(1)(f)(I), C.R.S.2010, provides, "The defendant used, displayed, or possessed on his or her person or within his or her immediate reach, a deadly weapon as defined in section 18–1–901(3)(e) at the time of the commission of a violation of this part 4."

6. The special offender circumstance delineated in subsection (1)(d) is that the defendant "unlawfully introduced, distributed, or imported into the state" particular amounts of certain drugs into the state; in subsection (1)(e), "unlawfully sold, dispensed, distributed, possessed, or imported" certain amounts of marijuana; and in the relevant version of subsection (1)(f), "used, dis-played, possessed, or had available for use a deadly weapon" at the time the drug offense was committed.

7. *See* Cindy Crane, Recent Development, L. Smith v. United States: *Enhanced Penalties for Using Guns as Barter in Drug Deals,* 20 J. Contemp. L. 295, 295 (1994) ("Drugs and guns are a dangerous combination.") (discussing how the escalation of violent drug-related crime led to the enactment of the federal sentence enhancement statute, which punishes those who use, carry, or possess a firearm in relation to a drug trafficking crime); *see also People v. Atencio,* 878 P.2d 147, 150 (Colo.App.1994) (because of the increased risk of injury or death to private citizens and law

could well have concluded that a person possessing drugs is obliged to ensure that guns are not available for use or risk increased punishment otherwise. *See United States v. de Velasquez*, 28 F.3d 2, 5 (2d Cir.1994) (Congress intended that violators run the risk of sentence enhancement based on the circumstances surrounding the offense); *People v. Overten*, 28 Cal.App.4th 1497, 34 Cal. Rptr.2d 232, 234 (1994) (if legislature had intended to impose scienter requirement that complicitor have knowledge that principal possesses gun in order to impose enhanced sentence, it would have done so).[8]

Consequently, we conclude that the trial court did not err in omitting a culpable mental state element from the special offender interrogatories.

## IV. Newly Discovered Evidence

Defendant also contends that the trial court erred in denying his Crim. P. 33 motion for new trial based on newly discovered evidence. We are not persuaded.

Before sentencing, defendant filed his motion alleging, as pertinent here, that, after he was convicted, he was moved to the jail where Bowler had previously been housed and while there, came into contact with individuals who "indicated their knowledge of [Bowler's] expressed intent to testify falsely against [defendant]." Following a hearing, at which defendant's trial counsel and three inmates formerly housed with Bowler testified, the trial court denied defendant's motion for new trial.

■ Motions for a new trial based on newly discovered evidence are looked on with great disfavor, and we will not overturn denials of such motions absent clear abuse of discretion. *People in Interest of J.P.L.*, 214 P.3d 1072, 1077 (Colo.App.2009). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Coughlin*, —— P.3d ——, ——, 2011 WL 1587732 (Colo.App.2011).

■ To succeed on a motion for new trial based on newly discovered evidence, a defendant must show that (1) the evidence was discovered after the trial; (2) the defendant and his counsel exercised diligence to discover all possible evidence favorable to the defendant prior to and during the trial; (3) the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and (4) on retrial the newly discovered evidence would probably produce an acquittal. *People v. McNeely*, 222 P.3d 370, 376 (Colo.App.2009).

■ Evidence is considered newly discovered "only if it was both unknown to the defendant and his counsel in time to be meaningfully confronted at trial and unknowable through the exercise of due diligence." *Farrar v. People*, 208 P.3d 702, 706 (Colo. 2009). Defendant, in his opening brief, concedes that the testimony of one inmate (Rusty Largent) would not justify a new trial because it was not discovered after trial.[9] However, he asserts, and we agree, that the record supports the trial court's determination that he met the first two prongs of the test with regard to the other two inmates (Pat Caven and Jamey Page): those inmates did not come forward until after trial and defendant's failure to discover them earlier was not the result of a lack of due diligence on his or his counsel's part.[10]

■ The trial court determined, however, that the two other inmates' testimony did not satisfy the third, or materiality, prong of the test. To meet that prong, "newly discovered evidence must be of sufficient consequence for reasons other than its ability to impeach,

enforcement personnel that may result from the combination of drugs and weapons, the state, pursuant to its police powers, may reasonably regulate and sanction such activities).

**8.** Both *de Velasquez* and *Overten* were cited, with approval, for these propositions in *Ramirez*, 997 P.2d at 1207.

**9.** Largent had been contacted by defendant's investigator before trial but did not want to get involved until after he read about defendant's conviction.

**10.** Defendant made efforts before trial to contact a number of inmates who may have had information about his case, and, as the trial court observed, it would have been unreasonable to expect defendant to seek out and interview every inmate who could have potentially had a conversation with Bowler in jail.

or cast doubt upon, the evidence already presented at trial. It must be consequential in the sense of being affirmatively probative of the defendant's innocence...." *Farrar,* 208 P.3d at 706–07 (citations omitted).

■ In our view, the trial court correctly determined that Caven's and Page's testimony at the hearing did not meet this third prong:

- Caven's testimony that Bowler said he was going to place the blame on defendant and Page's testimony that Bowler said defendant was "going down for something [Bowler] had done" were merely cumulative of Stanley Davis's testimony at trial;

- Caven's testimony that Bowler said he had transferred the guns and drugs to defendant's vehicle was not probative of defendant's innocence because, as the trial court observed, "[i]f those guns were transferred, they would have been visible to [defendant]," and "the only conclusion that [the jury] could draw is that [Bowler and Putney] transferred the guns and the drugs into the vehicle ... plac[ing] [defendant] on notice that those guns and drugs were present"; and

- Page's testimony that Bowler said the guns and the drugs belonged to Bowler was not material because it was defendant's possession and not his ownership of the seized items that was at issue in his trial.

Because the evidence presented was not affirmatively probative of defendant's innocence, the trial court did not abuse its discretion in concluding that the third prong of the newly discovered evidence test was not met, and thus, that defendant was not entitled to a new trial.

### V. Mandatory Parole Term

Finally, defendant contends, the People concede, and we agree, that the trial court erred when it imposed a five-year mandatory parole term. Because defendant was convicted of class four felonies, he was subject to only a three-year term of mandatory parole. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2010; *see also People v. Garcia,* 251 P.3d 1152, 1162 (Colo.App.2010) (plain language of section 18–18–407(1), C.R.S.2010, does not authorize trial court to enhance period of mandatory parole based on special offender considerations); *People v. Butler,* 224 P.3d 380, 387 (Colo.App.2009) (same). Consequently, defendant's mittimus must be corrected on remand to reflect a mandatory parole term of three years. We also direct the court on remand to further correct the mittimus to reflect that defendant's convictions were the result of a jury trial rather than guilty pleas.

The judgments of conviction and sentence are affirmed, and the case is remanded to the trial court with directions to correct the mittimus to reflect that defendant was convicted as a result of a jury trial and is subject to a three-year term of mandatory parole.

Judge CASEBOLT and Judge WEBB concur.