Opinion by JUDGE GRAHAM
¶ 1 The People of the State of Colorado appeal the trial court's order granting defendant, David Bueno, a new trial based upon newly discovered evidence. As a matter of first impression, we conclude the term "entry of judgment" in Crim. P. 33(c) means more than a "verdict or finding of guilt" and must include sentencing of the defendant. Accordingly, here, as a matter of law, defendant's Crim. P. 33(c) motion was timely because he had not been sentenced at the time he filed his motion. Because we further conclude *65 that the trial court did not abuse its discretion in determining the prosecution in this case violated Crim. P. 16 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that defendant was entitled to a new trial pursuant to Crim. P. 33(c) because of this violation, we affirm.
I. Background
¶ 2 Defendant was charged with and convicted of first degree murder after a jury trial for the death of fellow inmate Jeffrey Heird at the Limon Correctional Facility (LCF). At trial, the prosecution relied heavily on an anonymous note found in a shower drain at LCF stating, "Killers are Bueno and [codefendant]." Part of defendant's theory at trial was that the prosecution failed to investigate alternative suspects, specifically white inmates at LCF.
¶ 3 Approximately fifteen months after defendant's trial but before sentencing, the prosecution "in an abundance of caution" provided discovery of a letter (ABN letter) and report to the defense in this case. The ABN letter was found by Nurse Linda Deatrich in the medical "kite" box at LCF approximately thirty-five minutes after Heird's body was discovered in his cell. The ABN letter states:
Let it be known to all, The Aryan
Nation along with the neo nazi skinheads
hereby decree that all men of the white
race who refuse to accept their proud
race will hereby be exterminated. We hereby
select two to begin the extermination process
M. Nowlin and A. "Cueball" Latner. To begin
with there are three to choose from
LU-1 Sorenson has out lived his worth
LU-2 "Santa Clause" Parrish is worthless
LU 6 Hollenbeck need to be taught a lesson
The list continues but for now these are to be done soon.
[Illegible signature]
[Backward swastika] ABN
Nurse Deatrich filed an employee incident report about the discovery of the ABN letter (Deatrich report).
¶ 4 Two days after the ABN letter was discovered, inmate David Hollenbeck, a listed target, suffered cardiac distress and was taken to Denver General Hospital, where he died. Hollenbeck was observed to have suffered blunt force trauma to his chest but an autopsy revealed his death was caused by a pulmonary embolism.
¶ 5 Lieutenant Timothy Smelser, a gang intelligence officer at LCF, wrote a report about Hollenbeck which specifically referenced Heird's death and the discovery of the ABN letter (Smelser report). In Lieutenant Smelser's opinion, Heird's death and Hollenbeck's death were likely connected. The Smelser report was also not provided to the defense until more than fifteen months after defendant was convicted at trial.
¶ 6 It is undisputed that copies of the ABN letter and the Deatrich report were contained in the working file of Deputy District Attorney Robert Watson, the original prosecutor working on defendant's case. Thus, the prosecution had this information sometime in 2004 but did not provide it to defendant until July 2009. However, defense counsel were allowed to review records at LCF in May 2007, where the originals of the ABN letter and the Deatrich report are contained. Yet defense counsel did not discover either the ABN letter or the Deatrich report in 2007. Defendant's counsel learned of the ABN letter and the Deatrich report in June 2008, when counsel for a codefendant discovered the letter and report. But at the time of the material's discovery by the codefendant, defendant had already been convicted.
¶ 7 Defendant filed a motion for a new trial based upon Crim. P. 33(c) and the prosecution's "extraordinary violation of Brady v. Maryland ." In his brief in support of the motion, defendant requested a new trial because the ABN letter, the Deatrich report, and the Smelser report were not disclosed to the defense in violation of Crim. P. 16(I)(a)(2) and Brady . The court held hearings on defendant's motion and in a written order granted defendant a new trial pursuant to Crim. P. 33. The court concluded:
*66 In People v. Alejandro Perez, co-defendant of [defendant], upon order from the trial court, the Prosecution was ordered to review the working file of Robert Watson.... Deputy District Attorney Jason Siers reported finding within the working file of former Deputy District Attorney Watson two pages (handwritten report of Linda [Deatrich] and handwritten letter) ... which were then provided to defense counsel in "an abundance of caution." (Siers Memo of 7/6/09.) The People began an immediate investigation as to whether these documents had previously been provided in discovery. These documents were disclosed to the defense July 6, 2009, approximately 15 months after [defendant's] trial.
....
It is important to note these two reports and the letter were in the possession of the District Attorney near the very beginning of the investigation into the death of Jeffrey Heird. These documents were never included in discovery provided by the District Attorney to the [d]efendant until some fifteen (15) months after [defendant's] trial. The originals of these documents were later discovered by District Attorney's Investigators in the Department of Correction's file at LCF.
Furthermore, on April 2, 2004, Tim Smelser, LCF gang intelligence officer, authored a report ... highlighting to the investigators the possible connections of the Jeffrey Heird death and the death of Hollenbeck. This report was not given in discovery until after the [Deatrich] report and the "ABN" letter were disclosed. Smelser testified he was responsible at the beginning of the investigation into Heird's murder to compile all relevant reports and information for the investigators. He further testified he gave his reports to all those assigned to investigate the Heird murder.
....
The defense theory from the beginning was that the murder of Heird was the work of other white inmates, possibly white supremacists. The "ABN" letter of March 28, 2004, coupled with the death of inmate Hollenbeck shortly after the murder of Heird, and Investigator Smelser's voicing his suspicions and concerns provides added credibility to the defense theory. This information was not in the possession of the [d]efendant prior to or during the trial on the merits.
The defense was never able to fully develop this theory of defense for [defendant] because the Prosecutors failed to timely disclose these relevant and possibly exculpatory documents and reports. These materials were in the District Attorney's possession at the very outset of the investigation of the Heird murder. The District Attorney does not get to decide which discovery is relevant for defense purposes....
The People argue this discovery, although provided when located in July 2009 by Deputy District Attorney Siers, was available to the defense in the files held at LCF. The originals of these reports were located by investigators for the District Attorney's office in monthly incident reports which were made available and had actually been reviewed by defense counsel and/or investigators in May 2007. At the time of the May 2007 review, the defense focus was on incidents in LCF involving the use of "shanks." The defense was given the opportunity to review and copy, if requested, documents at that time, but did not locate the documents in question. Despite this "opportunity" to locate, copy, and investigate the reports and the letter in May 2007, the Court is of the opinion the Prosecution failed to comply with its obligations under Rule 16, Part 1. This is simply because these materials were known to the Prosecution and in their possession. Apparently, someone from the District Attorney's office made the conscious decision this information was not to be included in discovery because it was not relevant. This information was found segregated from the balance of the working file held by former Deputy District Attorney Watson. The Trial Court cannot say with certainty the District Attorney acted in bad faith by withholding relevant and possibly exculpatory evidence. Deputy District Attorney Watson left the District *67 Attorney's office before formal charges were filed or hearings conducted in this matter, and after which new Deputy District Attorneys were appointed. It is apparent to the Trial Court that a conscious decision was made at some point early in this case to keep the information from the [d]efendant by separating these documents from the balance of Watson's working file.
It is the opinion and finding of the Trial Court that the failure by the Prosecution to provide this discovery when it was in the District Attorney's possession and thought to have relevance to the Heird investigation at the outset is a violation requiring a severe sanction. This discovery, whether deemed admissible or not and if investigated, could have significantly impacted the outcome of the trial, a verdict which took almost four (4) days of deliberation and required the Court giving additional instructions to the jury after hearing they were at impasse. Evidence must be of character to probably bring about acquittal. People v. [Scheidt ], [ 187 Colo. 20, 528 P.2d 232 (Colo.1974). People v. Jones, 690 P.2d 866 (Colo.App.1984).
ORDER
For the foregoing reasons, the Trial Court finds the [d]efendant's right to present a full, fair, and complete defense to the charges, his right to due process under the State and Federal constitutions, and his right to be provided all relevant and possible exculpatory evidence that might negate his guilt have been violated. Thus, the Court does now GRANT [d]efendant's motion for new trial pursuant to Rule 33.
II. Motion for a New Trial
¶ 8 On appeal the People contend the trial court erred in granting defendant a new trial. We disagree.
A. Crim. P. 16 and Brady v. Maryland
¶ 9 We reject the People's argument that the trial court abused its discretion in concluding the prosecution violated Crim. P. 16(I)(a)(2) and Brady v. Maryland in failing to disclose the ABN letter, the Deatrich report, and the Smelser report.
1. Standard of Review
¶ 10 "We review a trial court's resolution of discovery issues for an abuse of discretion." People in Interest of A.D.T., 232 P.3d 313, 316 (Colo.App.2010) ; accord People v. Herrera, 2012 COA 13, ¶ 10, 272 P.3d 1158. We also review for abuse of discretion a trial court's decision to impose sanctions for discovery violations. See People v. Lee, 18 P.3d 192, 196 (Colo.2001) ; People v. Loggins, 981 P.2d 630, 636 (Colo.App.1998). "Because of the multiplicity of considerations involved and the uniqueness of each case, great deference is owed to trial courts in this regard, and therefore an order imposing a discovery sanction will not be disturbed on appeal unless it is manifestly arbitrary, unreasonable, or unfair." Lee, 18 P.3d at 196.
2. Law and Analysis
¶ 11 "It is well-settled that a prosecuting attorney has both a statutory and a constitutional obligation to disclose to the defense any material, exculpatory evidence he possesses." Salazar v. People, 870 P.2d 1215, 1220 (Colo.1994) (citing Crim. P. 16(I)(a)(2) ; Brady, 373 U.S. at 86-88, 83 S.Ct. 1194 ). "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. 1194.
Under Crim. P. 16(I)(a)(2), prosecutors in Colorado are obligated to disclose Brady material to an accused even in the absence of a request by the defense. Once a dispute arises, the responsibility for determining what information must be disclosed shifts to the trial court. See [ Pennsylvania v. Ritchie, 480 U.S. 39, 58-60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ]. Colorado courts assessing the sufficiency of the prosecution's disclosure under Crim. P. 16(I)(a)(2) should evaluate the materiality of the undisclosed information, taking guidance from the Bagley standard [that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been *68 different. A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ]. Disclosures required by Crim. P. 16(I)(a)(2) should be made contemporaneously with other disclosures whenever possible. See II ABA Standards for Criminal Justice 11-2.1(c) commentary at 11.27 (2d ed. 1980).
People v. District Court, 790 P.2d 332, 338 (Colo.1990) ; see In re Attorney C, 47 P.3d 1167, 1171 (Colo.2002) (" Rule 16(I)(a)(2) mandates that '[t]he prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor. ' "); People v. Bradley , 25 P.3d 1271, 1276 (Colo.App.2001) ( " Crim. P. 16(I)(a)(2)... incorporates the holding of Brady v. Maryland by requiring the prosecution to disclose to the defense any evidence within the prosecution's possession or control that tends to negate the guilt of the accused as to the offense charged, or tends to reduce the punishment therefor." (citation omitted)).
¶ 12 "There are three components to a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).
¶ 13 Here, as noted, the trial court found that "the failure by the Prosecution to provide ... discovery when it was in the District Attorney's possession and thought to have relevance to the Heird investigation at the outset is a violation requiring a severe sanction." Thus, the court concluded defendant's "right to present a full, fair, and complete defense to the charges, his right to due process ... and his right to be provided all relevant and possible exculpatory evidence that might negate his guilt" were violated and the remedy was to grant defendant a new trial.
¶ 14 We perceive no abuse of discretion in this ruling. The trial court's determination that the prosecution violated Crim. P. 16 is supported by the record. The trial court evaluated the materiality of the ABN letter, the Deatrich report, and the Smelser report and concluded this information "could have significantly impacted the outcome of the trial." See People v. Jowell, 199 P.3d 38, 47 (Colo.App.2008) ("To obtain a new trial for a discovery violation, the defendant must show a reasonable likelihood that the verdict would have been different had the pertinent information been disclosed before trial."); People v. Banuelos, 674 P.2d 964, 966 (Colo.App.1983) ("A new trial is required only if the undisclosed information might have affected the outcome of the trial. Where defendant's rights are not affected, the trial court may consider judicial economy in fashioning a remedy.").
¶ 15 Furthermore, the court correctly noted that "whether deemed admissible or not" this information should have been disclosed pursuant to Crim. P. 16(I)(a)(2). See People v. Corson, 2013 COA 4, ¶ 18, 411 P.3d 28.
¶ 16 Nonetheless, the People argue that they complied with Crim. P. 16 because they made this information "available" to the defense pursuant to Crim. P. 16(I)(a)(1) by allowing the defense to review records at LCF in 2007, where the originals of the ABN letter and the Deatrich report are contained. However, Crim. P. 16(I)(a)(2) specifically states that the prosecution "shall disclose " any information tending to negate the guilt of the accused. This mandatory disclosure is something more than making information "available" under Crim. P. 16(I)(a)(1). Thus, because it is undisputed that the prosecution had copies of the ABN letter and the Deatrich report in Watson's working file, it was incumbent upon the prosecution to provide this information to defendant. As the trial court noted, "[i]t is apparent ... that a conscious decision was made at some point early in this case to keep the information from the [d]efendant by separating these documents from the balance of Watson's working file." Thus, while providing defense counsel with the opportunity to review incident reports at LCF might have made that information *69 "available," under the circumstances here, the prosecution's failure to disclose evidence available in its own working file violated the mandatory disclosure requirement of Crim. P. 16(I)(a)(2) and Brady .
B. Crim. P. 33
¶ 17 The People further contend the trial court abused its discretion in failing to address in its order their argument that defendant's motion for a new trial was time barred. We conclude, as a matter of first impression, that "entry of judgment" under Crim. P. 33(c) includes both a "verdict or finding of guilt" and a defendant's sentencing, and because defendant had not been sentenced before he filed his Crim. P. 33(c) motion, as a matter of law defendant's motion was timely. Consequently, we reject the People's contention.
1. Standard of Review
¶ 18 "A trial court's decision whether to grant a new trial under Crim. P. 33(c) is reviewed for abuse of discretion." People v. Munsey, 232 P.3d 113, 120 (Colo.App.2009). "Interpretation of the criminal rules of procedure presents a question of law, which we review de novo." People v. Brosh, 2012 COA 216M, ¶ 6, 297 P.3d 1024.
2. "Entry of Judgment" in Crim. P. 33(c)
¶ 19 Crim. P. 33(c) provides:
The court may grant a defendant a new trial if required in the interests of justice. The motion for a new trial shall be in writing and shall point out with particularity the defects and errors complained of. A motion based upon newly discovered evidence or jury misconduct shall be supported by affidavits. A motion for a new trial based upon newly discovered evidence shall be filed as soon after entry of judgment as the facts supporting it become known to the defendant, but if a review is pending the court may grant the motion only on remand of the case. A motion for a new trial other than on the ground of newly discovered evidence shall be filed within 14 days after verdict or finding of guilt or within such additional time as the court may fix during the 14-day period.
(Emphasis added.)
¶ 20 Here, the prosecution argued to the trial court that defendant's motion for a new trial was untimely because, although the prosecution did not provide defendant with copies of the ABN letter and the Deatrich report until July 2009, defense counsel had knowledge of the letter and report in June 2008 when counsel for a codefendant discovered the letter and report and informed them of its existence. Therefore, the prosecution argued that defense counsel failed to file defendant's motion for a new trial based upon newly discovered evidence as soon after entry of judgment as the facts supporting it became known to defendant. See Crim. P. 33(c). Defendant argues his motion is timely as a matter of law because no "entry of judgment" occurred before he filed his motion since he had not been sentenced by the court at the time he filed his motion. We agree with defendant.
¶ 21 The plain language of Crim. P. 33(c) makes a distinction between a motion for a new trial based upon newly discovered evidence, which must be filed "as soon after entry of judgment as the facts supporting it become known to the defendant," and a motion for a new trial based upon any other grounds, which must be filed "within 14 days after verdict or finding of guilt ." Crim. P. 33(c) (emphasis added). Thus, based upon the plain language of the rule, we must conclude that "entry of judgment" is different from a "verdict or finding of guilt." Cf. Carlson v. Ferris, 85 P.3d 504, 509 (Colo.2003) ( "[T]he use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings."); City of Aurora v. Powell, 153 Colo. 4, 7-8, 383 P.2d 798, 800 (1963) ("The verdict is not a judicial determination, but rather a finding of fact which the trial court may accept or reject and utilize in formulating a judgment."); cf. Fed.R.Crim.P. 33(b)(1)-(2) (stating that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty " and "[a]ny motion for a new trial grounded on any reason other than *70 newly discovered evidence must be filed within 14 days after the verdict or finding of guilty " (emphasis added)).
¶ 22 The next logical step after a trial court has received a verdict or finding of guilt in a criminal trial is to determine the sentence to be imposed upon a defendant. Cf. Crim. P. 32(b)(3) ("A judgment of conviction shall consist of a recital of the plea, the verdict or findings, the sentence, the finding of the amount of presentence confinement, and costs, if any are assessed against the defendant, the finding of the amount of earned time credit if the defendant has previously been placed in a community corrections program, and a statement that the defendant is required to register as a sex offender, if applicable."). Indeed, Crim. P. 33(c) contemplates that if a defendant appeals his conviction, the trial court must wait until the appellate court remands the case before ruling on a motion for a new trial based on newly discovered evidence. Crim. P. 33(c) ("A motion based upon newly discovered evidence shall be filed as soon after entry of judgment as the facts supporting it become known to the defendant, but if a review is pending the court may grant the motion only on remand of the case. " (emphasis added)). A defendant is only able to appeal after a final judgment, including sentencing, has been entered by the trial court. See C.A.R. 1(a)(1) ("An appeal to the appellate court may be taken from ... [a] final judgment of any district ... court...."); People v. Fisher , 189 Colo. 297, 299, 539 P.2d 1258, 1259-60 (1975) (in typical criminal appeal, the date of sentencing is the date of final judgment subject to appeal).
¶ 23 Accordingly, we conclude that "entry of judgment" in Crim. P. 33(c) means a verdict or finding of guilt and imposition of a sentence. Because here defendant had yet to be sentenced at the time he filed his Crim. P. 33(c) motion, we conclude his motion, as a matter of law, was timely.
¶ 24 We do not accept the People's argument that by concluding that "entry of judgment" includes more than a verdict or finding of guilt, we allow a defendant to delay filing a motion for a new trial long after the newly discovered evidence becomes known "simply because sentencing has yet to occur." We can think of no scenario under which a defendant would strategically delay such a motion when, if successful, he would receive a new trial. Nor can we think how such a delay would prejudice the prosecution. Motions for a new trial based upon newly discovered evidence are looked on "with great disfavor," People v. Hopper, 284 P.3d 87, 92 (Colo.App.2011), and the defendant has the burden of proving a new trial is warranted under a four-part test. Id.
¶ 25 We note that our interpretation of Crim. P. 33(c) does not disturb the trial court's discretion to determine whether a motion is timely once an entry of judgment has occurred. Rather, under the circumstances here, the trial court did not need to determine the timeliness of defendant's motion because defendant had yet to be sentenced, and thus, his motion was timely as a matter of law.
3. Law and Analysis
¶ 26 The People further contend the trial court abused its discretion in granting defendant's motion because defense counsel did not exercise reasonable diligence in trying to discover the ABN letter and the Deatrich report and this information was not "of such a character as probably to bring about an acquittal verdict if presented at another trial." People v. Williams, 827 P.2d 612, 614 (Colo.App.1992). We disagree.
¶ 27 " 'The court may grant a defendant a new trial if required in the interests of justice.' " Munsey, 232 P.3d at 121 (quoting Crim. P. 33(c) ). "A motion for a new trial may be based on newly discovered evidence or on other grounds." Id. "[T]he terms 'interests of justice' and 'newly discovered evidence' do not describe separate grounds for granting a new trial. Rather, newly discovered evidence is one example of a circumstance that can establish that a new trial is required in the interests of justice." Id .
To succeed on a motion for a new trial based upon newly discovered evidence, the defendant must show that the evidence was discovered after the trial; that defendant *71 and his counsel exercised reasonable diligence to discover all possible evidence favorable to the defendant prior to and during the trial; that the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and lastly that the newly discovered evidence is of such a character as probably to bring about an acquittal verdict if presented at another trial.
Williams, 827 P.2d at 614.
¶ 28 Here, the court found, with record support, that counsel did not know of the evidence until after defendant's trial and that the information was material to the issues involved. See id. Further, the court concluded that it was irrelevant whether defense counsel could have discovered this evidence because the prosecution had discovered the evidence and through conscious action failed to provide that discovery to defendant. Cf. United States v. Torres, 569 F.3d 1277, 1281 (10th Cir.2009) (under Fed.R.Crim.P. 33, a defendant claiming a Brady violation must prove that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material" (quoting United States v. Velarde, 485 F.3d 553, 558 (10th Cir.2007) )). Lastly, the court found that the verdict, which took almost four days of deliberation and required additional court instruction on jury impasse, could have been significantly impacted by this evidence. Indeed, the record before us reflects the prosecution relied heavily on an anonymous note that stated defendant was the killer. The Smelser report indicated a likely connection between Heird's death and Hollenbeck's death, implicating the white supremacists as alternative suspects. The court's finding is analogous to a determination that the evidence was of a character to probably bring about an acquittal. See Williams, 827 P.2d at 614 ; see also People v. McNeely, 222 P.3d 370, 376 (Colo.App.2009).
¶ 29 Accordingly, we conclude the trial court did not abuse its discretion in granting defendant a new trial pursuant to Crim. P. 33(c).
III. Conclusion
¶ 30 The order is affirmed.
JUDGE NAVARRO concurs.
JUDGE RICHMAN concurs in part and dissents in part.