23CA1580 Peo v Caime 06-18-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1580
Arapahoe County District Court No. 15CR1883
Honorable Eric White, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeffrey Thomas Caime,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE FREYRE
Johnson and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Chelsea E. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jeffrey Thomas Caime, appeals the district court's order concluding that his sixty-four-year habitual criminal sentence does not raise an inference of gross disproportionality.  We affirm.

## I.    Background

¶ 2    In 2015, the People charged Caime with possession with intent to distribute a controlled substance and possession of a controlled substance, both as a special offender.  At Caime's trial, the jury heard evidence that two officers spotted a parked car that had been reported stolen.  They observed a man get out of a truck and approach the stolen car, where he ultimately got into the passenger seat.  Caime was in the driver's seat.

¶ 3    The officers pinned the car with their vehicle and approached both sides of the vehicle.  The officer on the driver's side commanded Caime to show his hands, stop moving, and turn the car off.  Instead, the officer testified, Caime reached toward the center console area, which, in the officer's experience, was consistent with retrieving a weapon.  An officer used his baton to break the driver's side window.  The passenger complied with orders to exit the car, and Caime was pulled out of the passenger's side after he dove toward it.

¶ 4     Both men were placed in custody, and a search of the car revealed a bag of methamphetamine on the driver-side floorboard, and a semiautomatic pistol shoved between the driver's seat and the center console.  DNA evidence found on the pistol established a match to Caime's DNA profile.  In a police interview, a recording of which was played at trial, Caime admitted that he dealt methamphetamine, possessed methamphetamine during the incident in question, and was there to sell some to the man who got into the car with him.  *People v. Caime*, 2021 COA 134, ¶ 5.

¶ 5     The jury acquitted Caime of the intent to distribute charge but convicted him of the lesser offense of possession of a controlled substance.  The jury also entered a specific finding that Caime was a special offender based on the presence of the semiautomatic pistol.  The jury's special offender finding meant that the sentence for Caime's level 4 drug felony conviction would be enhanced to the sentence applicable to a level 1 drug felony.  *See* § 18-18-407(1)(d)(II), C.R.S. 2025 (a defendant who commits any drug felony commits a level 1 drug felony and is a special offender if the defendant or a confederate possessed a firearm to which the defendant or confederate had access in a manner that posed a risk

2

to others or in a vehicle the defendant was occupying at the time of the commission of the violation); *People v. Martinez*, 36 P.3d 201, 204 (Colo. App. 2001) (the special offender statute is a sentence enhancing provision).

¶ 6     In addition to his possession conviction, Caime was charged and adjudicated as a habitual offender based on a finding that he had five prior adult felony convictions between 2004 and 2014: criminal mischief; vehicular assault (reckless driving); possession with intent to distribute a controlled substance (methamphetamine); and two separate instances of possession of a weapon by a previous offender (POWPO).

¶ 7     The district court imposed the statutorily mandated sixty-four-year habitual criminal sentence and, after conducting an abbreviated proportionality review, found no inference of gross disproportionality. *Caime*, ¶¶ 47, 39. In doing so, the court concluded that the predicate offenses of possession with intent to distribute a controlled substance, POWPO, and vehicular assault were all per se grave or serious offenses. *Id.* at ¶ 47.

¶ 8     On direct appeal, however, a division of this court concluded that Caime was entitled to a new abbreviated proportionality review

because those three offenses are not per se grave or serious. *Id.* at ¶¶ 56-57 (vehicular assault (reckless driving) is not per se grave or serious); *Wells-Yates v. People*, 2019 CO 90M, ¶¶ 71-72 (possession with intent to distribute a controlled substance is not per se grave or serious); *People v. Wright*, 2021 COA 106, ¶¶ 73-79 (POWPO is not per se grave or serious).

¶ 9 The division remanded the case to the district court for a new abbreviated proportionality review with specific instructions to consider (1) the factual circumstances underlying Caime's five predicate offenses to determine the gravity or seriousness of those crimes; and (2) "the harshness of Caime's sixty-four-year sentence in light of the gravity or seriousness — or lack thereof — of these offenses along with Caime's triggering offense of possession of a controlled substance as a special offender, as well as his parole eligibility." *Caime*, ¶ 58. The division expressed "no opinion regarding the proper outcome of the proportionality review." *Id.* at ¶ 57 n.4.

¶ 10 On remand, Caime asked the district court to consider various legislative amendments, including (1) the reclassification of his triggering offense from a level 4 drug felony to a level 1 drug

misdemeanor; and (2) the fact that the direct file statute had been amended such that, had Caime's criminal mischief and vehicular assault offenses "happened today," he could not have been charged as an adult under the direct file statute.

¶ 11    In conducting the new abbreviated proportionality review, the court considered (1) the specific factual circumstances underlying the triggering and predicate offenses; (2) the legislative changes identified by defense counsel; (3) Caime's history of recidivism; and (4) the harshness of the penalty.  In combination, the court concluded, Caime's triggering and predicate offenses were not so lacking in gravity and seriousness as to raise an inference that the sixty-four-year habitual criminal sentence imposed on the triggering offense was grossly disproportionate.

## II.    Discussion

¶ 12    Caime contends that a particularized analysis of the facts and circumstances of his triggering and predicate offenses "reveals [that] none of them are grave and serious."  Thus, in his view, his triggering and predicate offenses are, in combination, so lacking in gravity or seriousness as to suggest that his sixty-four-year sentence is grossly disproportionate.  We disagree.

A.     Proportionality: Legal Principles and Standard of Review

¶ 13     The habitual criminal statute, when applicable, strips a district court of its discretion in sentencing. *Wells-Yates*, ¶ 20. "But the legislature's authority to prescribe harsher punishment for habitual criminals is not without constitutional contours." *Id.* at ¶ 1. The Eighth Amendment to the United States Constitution prohibits the imposition of a sentence that is grossly disproportionate to the severity of the crime committed. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment); *Wells-Yates*, ¶ 5. The Eighth Amendment "does not require strict proportionality between crime and sentence." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment). Rather, it forbids only extreme sentences. *Close v. People*, 48 P.3d 528, 536 (Colo. 2002), *abrogated on other grounds by*, *Wells-Yates*, ¶¶ 16-17.

¶ 14     When, as here, a defendant challenges the proportionality of a habitual criminal sentence, the district court must first conduct an abbreviated proportionality review assessing (1) the gravity or seriousness of both the triggering and predicate offenses and (2) the harshness of the penalty imposed for the triggering offense.

*Wells-Yates*, ¶ 23. If a crime has not been designated per se grave or serious, the gravity or seriousness of the offense requires a fact-based inquiry into several factors, including but not limited to the harm caused or threatened to the victim or society; whether the offense involved violence or the threat of violence; the "absolute magnitude of the crime"; whether the offense is the lesser included or greater offense; whether the offense was an attempted or a completed crime; whether the defendant was an accessory, complicitor, or principal; and the defendant's culpability and motive. *McDonald v. People*, 2024 CO 75, ¶ 12 (citation omitted). Also, "[i]n determining the gravity or seriousness of [an] offense during an abbreviated proportionality review, the trial court should consider relevant legislative amendments enacted after the date of the offense, even if the amendments do not apply retroactively." *Wells-Yates*, ¶ 45.

¶ 15    In analyzing the gravity or seriousness of the triggering and predicate offenses, a court need not classify each crime as grave or serious. *People v. Terry*, 2019 COA 9, ¶ 41, *overruled on other grounds by*, *People v. Segura*, 2024 CO 70. Instead, it determines whether, *in combination*, those offenses "are so lacking in gravity or

seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime." *Wells-Yates*, ¶ 23.

¶ 16    In assessing the harshness of the penalty, the court should consider both the length of the sentence and the defendant's eligibility for parole, affording "great deference" to the legislature's determination. *Id.* at ¶ 62. Given the "primacy of the General Assembly in crafting sentencing schemes," an abbreviated proportionality review will almost always result in a conclusion that the sentence is not unconstitutional. *Id.* at ¶ 21 (citation omitted).

¶ 17    We review de novo whether a sentence raises an inference of gross disproportionality. *See id.* at ¶ 35.

### B.    The Gravity or Seriousness of the Predicate and Triggering Offenses

¶ 18    Although Caime asserts that none of his predicate and triggering offenses are grave or serious on their facts, we partially agree with the district court's assessment that they are.

¶ 19    Caime's predicate offense of criminal mischief involved more than thirty victims and damage to multiple vehicles using rocks and golf clubs totaling more than $23,000. The probable cause affidavit reflects that Caime drove a group of friends around and, though not

the one to come up with the idea, he was among the first of the group to participate in smashing car windows along an entire block. Under these circumstances, Caime's criminal mischief conviction is serious. *See People v. Mershon*, 874 P.2d 1025, 1032 (Colo. 1994) (examining the facts and circumstances underlying the crime of attempted criminal mischief and concluding that it constituted a serious crime where the defendant was seen knocking over traffic signs, which he then used to smash the window and body of a car, causing approximately $4,400 worth of damage), *abrogated on other grounds by*, *Melton v. People*, 2019 CO 89.

¶ 20 Five months after the criminal mischief offense, Caime pleaded guilty to the offense of vehicular assault (reckless driving). A witness observed that Caime "blew through a stop sign," making no attempt to stop, and "T-Boned" another vehicle. The driver of the other vehicle suffered serious bodily injury — broken ribs, a fractured hip, and internal injuries to his spleen. Law enforcement determined that Caime was traveling twenty-two miles per hour over the posted speed limit at the time of the collision. Given Caime's admitted culpability and the grave harm caused to the victim, this crime was likewise grave and serious on its facts.

¶ 21    The next year, Caime pleaded guilty to one count of POWPO. The conviction arose after individuals reported hearing gunshots in their neighborhood. One witness reported hearing twelve shots and a responding officer concluded that the "shots were fired indiscriminately into the neighborhood." Law enforcement contacted a car in which Caime and several others were riding. One of the passengers reported that all of the passengers who were sitting by windows, including Caime, had fired shots from the vehicle, and a 9mm gun was recovered from the floorboard. A round of 9mm ammunition was found in Caime's pocket. Notwithstanding Caime's assertion that no people or homes were targeted or harmed and this was not a violent crime, this completed crime was grave and serious due to the serious threat of harm it presented and Caime's level of culpability in admitting to possessing a firearm.

¶ 22    Caime's next POWPO conviction stemmed from evidence that he was contacted by law enforcement while in a vehicle. An illegal switchblade was located under the driver's seat cover, beneath where Caime had been sitting. In exchange for the dismissal of other felony counts, Caime pleaded guilty to an added count of

POWPO. Although possession of a weapon by a convicted felon always presents some risk to society, possession of a switchblade without some corresponding evidence of harm or threatened harm leads us to conclude that this crime was not, on its own, grave or serious.

¶ 23    Likewise, we conclude that Caime's prior conviction for possession with intent to distribute methamphetamine was, standing alone, not grave or serious. After law enforcement discovered he was driving with a revoked license, they searched his person and vehicle and discovered a methamphetamine pipe in his pants pocket and a case containing empty, individual baggies of varying sizes, and two larger baggies containing what was later identified as methamphetamine. Caime's guilty plea indicated that the weight of the methamphetamine was fourteen grams or less. Although our supreme court has "anticipate[d] that many convictions for possession with intent will be grave or serious," *Wells-Yates*, ¶ 70, the quantity of methamphetamine found in Caime's possession was small. *See id.* at ¶¶ 30, 69 (characterizing seven grams or less of methamphetamine as a "small amount" such

11

that the person found with it might not be engaged in a grave or serious crime).

¶ 24 Last, we consider the triggering offense. Based on the facts set forth in Part I of this opinion, we conclude that it was serious. True, Caime was found guilty of the lesser offense of simple possession of only a small amount of methamphetamine. But this was not Caime's first felony conviction, indicating a greater level of seriousness. *See id.* at ¶ 23 (concluding that a defendant's "history of felony recidivism" is a relevant consideration to the grave or serious inquiry). Moreover, the circumstances showed that he appeared to be reaching for a weapon when confronted by law enforcement, and a semiautomatic pistol containing his DNA was recovered from the area into which he was reaching.

¶ 25 Nonetheless, Caime advances four reasons why we should find that, taken together, his crimes raise an inference of gross disproportionality.

¶ 26 First, relying on *Miller v. Alabama,* 567 U.S. 460, 473 (2012), and similar cases addressing the constitutionality of juvenile sentencing, he notes that his criminal mischief and vehicular assault convictions were committed when he had not yet reached

12

the age of eighteen, and he thus had a diminished culpability because "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471. He further notes that, though he was no longer a juvenile when he committed his first POWPO offense, "neurologically speaking he was still a child." But Caime was an adult when he received the enhanced sentence here. And when a defendant receives such a sentence because of prior felonies he committed, "his age at the time of the prior felonies doesn't impact the validity of the adult sentence under the Eighth Amendment." *People v. Porter*, 2019 COA 73, ¶ 19.

¶ 27 Second and related to his first point, Caime notes that his criminal mischief and vehicular assault offenses are no longer direct file eligible and, thus, would not today be eligible to serve as predicate offenses for habitual criminal purposes. This too doesn't impact our proportionality analysis because, in our view, this is an attack on his habitual criminal adjudication, not the proportionality of his sentence, which is the limited issue before us.

¶ 28 Third, we are not persuaded that statutory changes to the classification of criminal mischief render Caime's criminal mischief offense not grave or serious. Although such legislative changes are

evidence of evolving standards of decency, *Wells-Yates*, ¶ 49, this fact does not alter our conclusion that the particularized facts of Caime's criminal mischief offense were serious. *People v. McRae*, 2019 CO 91, ¶ 16 (While statutory reclassifications are relevant, "they are not determinative of whether an offense is grave or serious." Rather, "they must be analyzed in conjunction with the facts and circumstances surrounding the crime committed."). And to the extent Caime faults the district court for stating that he acted "intentionally" rather than "knowingly" in committing this offense, this likewise doesn't change our calculus such that we would conclude that Caime's actions of smashing numerous cars were less serious.

¶ 29    Fourth and finally, we note — as the district court did — that Caime's triggering offense has been reclassified from a level 4 drug felony to a level 1 drug misdemeanor for offenses committed on or after March 1, 2020. *See* § 18-18-403.5(2)(c), C.R.S. 2025 (possession of material containing less than four grams of a schedule I or II controlled substance is a level 1 drug misdemeanor). Though we are mindful that the reclassification of an offense can provide "evidence of the legislature's view of the gravity or

seriousness of the crime," *Wells-Yates*, ¶ 50, we think that an additional factor here — that Caime was reaching for a firearm and was found by a jury to be a special offender — indicates that his crime was grave or serious notwithstanding the legislative change. This is because "[t]he presence of a gun undoubtedly increases the seriousness of a drug offense." *People v. Wells-Yates*, 2023 COA 120, ¶ 45 (concluding that the possession of a handgun was an "additional factor" to consider notwithstanding legislative reclassification of a triggering offense); *see also People v. Hopper*, 284 P.3d 87, 91 (Colo. App. 2011) (noting "the well-known potential for danger that exists whenever drugs and deadly weapons are present").

¶ 30     We also note, like the district court, Caime's lengthy criminal history, beginning in 2004 and continuing to the triggering offense. *Wells-Yates*, 2019 CO 90M, ¶ 23 ("[T]he grave or serious inquiry includes consideration of the defendant's history of felony recidivism."). Though the district court noted a "break in criminality between 2005 and 2012," it surmised that this was due to "enforced law-abiding behavior," which the record supports as Caime was under supervision for much of that time frame.

¶ 31   Thus, notwithstanding our conclusion that two of Caime's predicate offenses were not grave or serious, we nonetheless agree with the district court that, in combination, the predicate and triggering offenses are not so lacking in gravity or seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime.  *Id.*

### C.   The Harshness of the Penalty

¶ 32   Next, we consider whether the sixty-four-year sentence was unduly or unconstitutionally harsh.  We conclude that it was not.

¶ 33   "[T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts."  *Harmelin*, 501 U.S. at 998 (Kennedy, J., concurring in part and concurring in the judgment) (citation modified).  Thus, "[r]eviewing courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  *Id.* at 999 (citation modified).  Caime's sixty-four-year sentence, though lengthy, was within the range permitted — indeed, mandated — at the time of his offense.

16

¶ 34    In addition, the record indicates that Caime will be eligible for parole after serving less than half his sentence.  Though the sentence might seem harsh on its face, Caime's eligibility for parole may "reduce the actual period of confinement and render the penalty less harsh."  *Wells-Yates*, 2019 CO 90M, ¶ 14.

¶ 35    Because Caime's sentence falls within the range fixed by the legislature and he will be eligible for parole after serving less than half his sentence, we conclude that his sentence isn't unconstitutionally harsh.

## III.    Disposition

¶ 36    Under the circumstances, the sentence does not raise an inference of disproportionality, and consequently, we discern no error in the district court's order so concluding.  Thus, we affirm.

JUDGE JOHNSON and JUDGE KUHN concur.