The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Micaela RAMIREZ, Defendant–Appellant.

No. 97CA1792.

Colorado Court of Appeals, Div. I.

Aug. 19, 1999.

Rehearing Denied Sept. 23, 1999.

Certiorari Granted April 24, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General,

Michael E. McLachlan, Solicitor General, Jerry N. Jones, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Micaela Ramirez, appeals from the judgment of conviction entered upon jury verdicts finding her guilty of unlawful possession of 28 grams or more of cocaine, possession of marihuana with intent to distribute, possession of more than eight ounces of marihuana, and of being a special offender based on its finding of possession of more than 100 pounds of marihuana. We affirm.

According to evidence presented by the prosecution, police officers, acting on information from a confidential informant, went to the house where defendant, her boyfriend, and his brother lived. After obtaining defendant's consent to search the house, an officer discovered a baggie containing cocaine in the bedroom shared by defendant and her boyfriend. Another officer found bags containing 287 pounds of marihuana in the crawl space under the house. Officers also seized other items that, according to an expert witness, generally are used by persons involved in drug distribution.

Defendant testified at trial that the drugs found in her house were not hers and that she did not know that any drugs had been brought into her house. The jury convicted her of the charges as a complicitor.

## I.

■ Defendant contends that the trial court erred in instructing the jury that it could find she was a special offender on the ground of possession of 100 pounds or more of marihuana without having to determine whether she knew the amount of marihuana possessed. She argues that, because she was found guilty of the offense of possession and possession with intent to distribute only as a complicitor, the prosecution was required to prove that she not only intentionally aided in

the offense with knowledge of the underlying offense, but also that she did so with knowledge of the amount of marihuana involved. We disagree.

■ The special offender statute, § 18–18–407(1), C.R.S.1998, lists certain "extraordinary aggravating circumstances," the presence of which, if proven, subjects a defendant to an enhanced sentence as a special offender. Once a jury has determined that a defendant possessed the mental state required for conviction of the substantive offense, an enhanced sentence must be imposed whether or not the defendant fully knew of the circumstances leading to the special offender finding. *Cf. United States v. Falu*, 776 F.2d 46 (2d Cir.1985) (defendant did not have to have specific knowledge of proximity of school for sentence enhancement based on distribution of drugs within 1,000 feet of school). One such circumstance, under § 18–18–407(1)(e), C.R.S.1998, is that a defendant possessed 100 pounds or more of marihuana.

■ Here, because the special offender statute is triggered only after a felony drug conviction, and because its effect is to increase an offender's sentence upon a finding of specific aggravating circumstances, the provisions of § 18–18–407(1) are sentence enhancers and do not create a substantive offense. *Vega v. People*, 893 P.2d 107 (Colo. 1995).

In its analysis, the *Vega* court considered both the fact that a conviction for the underlying offense would stand without proof of the circumstances establishing special offender, *see Armintrout v. People*, 864 P.2d 576 (Colo.1993) (sentence enhancer not element of the offense charged because a defendant may be convicted of the underlying offense absent proof of the enhancer), as well as the legislative history behind the enactment of § 18–18–407(1). The court concluded that the intent of the General Assembly was to establish a sentencing provision which would require imposition of harsher penalties under certain "extraordinary aggravating circumstances." *Vega v. People, supra*, 893 P.2d at 113; § 18–18–401, C.R.S.1998 (legislative declaration that "strict control of controlled substances in this state is necessary for the

immediate and future preservation of the public peace, health, and safety").

The *Vega* court also noted that, because in order to impose an enhanced sentence, notice, hearing, proof beyond a reasonable doubt, and appropriate findings all were required, any federal constitutional due process concerns were satisfied.

### A.

■ However, regardless of the *Vega* decision, defendant argues that the severity of the sentence, and the disparity between the sentence for a special offender and the one applicable to a person not designated a special offender, are so great that due process requires § 18–18–407(1)(e) to be treated as an element of the underlying offense. Specifically, defendant relies on *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), in support of her argument that the harshness of the penalty under the special offender provision here requires a "knowingly" *mens rea*. We disagree.

In *Jones*, in analyzing a carjacking statute, the Supreme Court determined that characterizing as sentencing enhancers the statutory provisions providing for increased penalties if serious injury or death resulted would have serious due process implications. The sentence enhancers there, under the carjacking statute, had the potential to increase a defendant's sentence from a fine or 15 years imprisonment to life imprisonment.

However, the severity of the sentence was but one factor that the *Jones* court considered in determining that the federal carjacking statute created separate substantive offenses. Significantly, under the federal scheme, sentence enhancers are applied by the court after a finding of guilt of the underlying offense without notice to the defendant or a finding by a jury that the enhancer existed beyond a reasonable doubt. In the court's view, the combination of these factors—the greatly increased sentence, imposed without notice or hearing and on a finding by only the sentencing court that, by a preponderance of the evidence, serious bodily injury or death had resulted—raised serious due process concerns.

■ In contrast, under Colorado law, the special offender circumstance must be charged in the information, and the factfinder is required, by a special finding, to find the existence of the special offender circumstance beyond a reasonable doubt.

Moreover, the *Vega* court specifically determined that, although § 18–18–407(1) did require imposition of a greater sentence than that available under § 18–18–105, C.R.S. 1998, the increase in the presumptive range did not disproportionately increase the penalty imposed in relation to that imposed for the underlying offense.

And, here, in contrast to the potential enhancement penalties in *Jones*, which increased the applicable sentence from a fine to life imprisonment, the presumptive penalty range is increased from 2 to 6 years to 24 to 48 years. Although not insignificant, considering the General Assembly's intent to require a sentence that would constitute a meaningful penalty for both independent small drug distributors as well as drug traffickers who are part of larger organizations, we conclude that this disparity is not disproportionate to the underlying offense of distribution. *See Vega v. People, supra* (increase in sentencing range from 4 to 12 years to 24 to 48 years not disproportionate to underlying offense and purpose for which § 18–18–407(1) was enacted).

### B.

Defendant argues that, even if her federal due process rights were not violated, the Colorado constitution provides for greater due process protection and, therefore, a specific finding as to her knowledge of the amount of marihuana possessed is required. We do not agree.

■ Although a state may enlarge the federal concept of due process, the due process clause of Colorado's constitution forbids the destruction, in whole or in part, of any of the "established principles of private rights and distributive justice," including the requirement that an accused be found not guilty of a crime unless guilt is established as to all material elements beyond a reasonable doubt. *People ex rel. Juhan v. District*

*Court*, 165 Colo. 253, 266, 439 P.2d 741, 748 (1968).

■ Under Colo. Const. art. II, §§ 16 and 25, an accused is entitled to due process. This includes the right to be informed of the nature of the charges against him or her, the right to trial by an impartial jury on such charges, and the right to a presumption of innocence unless guilt is established as to all material elements beyond a reasonable doubt. Defendant's argument notwithstanding, we find no language in the Colorado constitution that enlarges a defendant's due process rights to encompass engrafting a scienter element onto a sentence enhancer.

■ Further, the provisions of § 18–18–407(1) and its application do not abrogate the due process requirements of the Colorado constitution. Notice is required, trial by jury is not eliminated, and a finding of the existence of the enhancer beyond a reasonable doubt is required before a defendant's sentence is increased. Under these circumstances, due process under Colo. Const. art. II, §§ 16 and 25, is satisfied.

### C.

Noting that she was convicted under a complicity theory, defendant points out that, even if a principal otherwise may be subjected to an enhanced sentence under § 18–18–407(1)(e), a complicitor may have intended only to aid in the underlying offense without knowledge of the special circumstances that expose one to an increased sentence. In particular, she suggests that here, although a principal would have some awareness that the amount of marihuana possessed was significant, she could have intended to aid in the possession with intent to distribute without knowing how much marihuana was present. According to defendant, then, it would be fundamentally unfair for a complicitor to be sentenced to such a harsh penalty if, lacking knowledge of the surrounding circumstances, his or her intentional conduct was directed only at the substantive offense. Therefore, she argues, it was reversible error not to require the jury to find that she, as a complicitor, intended to aid in the commission of the underlying offense with the knowledge

that the amount possessed was 100 pounds or more. We disagree.

■■■. Complicity is a theory by which an accused may be held criminally liable for an offense committed by another. *Bogdanov v. People,* 941 P.2d 247 (Colo.1997).

A person may be found guilty of an offense as a complicitor if, "with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." Section 18–1–603, C.R.S.1997; *Bogdanov v. People, supra.*

■■■ Because complicity is a theory of law by which a defendant may be held accountable for a crime committed by another, punishment is imposed for the underlying crime and not for complicity. *People v. Osborne,* 973 P.2d 666 (Colo.App.1998); *see People v. Saiz,* 42 Colo.App. 469, 600 P.2d 97 (1979) (person guilty of offense as complicitor is legally accountable as the principal).

### 1.

Defendant argues that, because complicity is not an offense but merely a theory by which one may be held accountable for the criminal acts of another, and because the special offender provisions apply only to offenses, the provisions cannot apply to complicity, a "non-offense." We reject this argument.

■■■ Although complicity is a theory by which a conviction for the acts of another may be obtained, once a defendant has been convicted, he or she, nevertheless, is guilty of an offense. A defendant is not convicted of complicity, but rather is convicted of an offense under a theory of complicity as the means by which the offense was committed by a particular defendant. Thus, an offense exists to which the special offender provisions may apply. *See People v. Mason,* 642 P.2d 8 (Colo.1982) (acts of the principal are the acts of the complicitor).

### 2.

■■■ Nevertheless, defendant argues that she should not be subject to an enhanced

penalty for a circumstance of which she allegedly was unaware. We disagree.

■■■ There is no reason why a defendant, whether a principal or a complicitor, who knowingly traffics in drugs, should not bear the risk that the quantity involved is greater than that which he or she was aware, and that, therefore, such conduct might be more harmful than intended. It would defeat the General Assembly's purpose to control certain substances strictly if a defendant were permitted to avoid the consequences of the potential harm created by such behavior simply by arguing that he or she did not know the exact amount of drugs involved in the commission of the offense. Thus, once a complicitor undertakes to aid in the commission of the substantive offense, he or she bears the risk of the resultant penalty, including the risk of an enhanced penalty. *See United States v. de Velasquez,* 28 F.3d 2 (2d Cir.1994) (Congress intended that violators run the risk of sentence enhancement concerning the circumstances surrounding the offense); *United States v. Normandeau,* 800 F.2d 953 (9th Cir.1986) (complicitors, by their involvement in the offense, assume the risk of enhanced penalty); *United States v. Nieto,* 60 F.3d 1464 (10th Cir.1995) (complicitor responsible for amount of marihuana transported without regard to his knowledge of the amount); *People v. Overten,* 28 Cal.App.4th 1497, 34 Cal.Rptr.2d 232 (1994) (if legislature had intended to impose scienter requirement that complicitor have knowledge that principal possessed gun in order to impose enhanced sentence, it would have said so).

Therefore, because a complicitor is held to the same level of culpability as a principal, his or her status as such is without significance in regard to the imposition of an increased sentence under the special offender provisions of § 18–18–407(1). *See People v. Meza,* 38 Cal.App.4th 1741, 45 Cal.Rptr.2d 844 (1995) (those who knowingly possess controlled substances are strictly liable for enhancement based on amount regardless of their knowledge of the quantity); *cf. People v. Swanson,* 638 P.2d 45 (Colo.1981) (complicitor subject to enhanced sentence under crime of violence statute even though he did

not personally commit any of the acts described by it).

Here, prior to finding beyond a reasonable doubt that the amount of marihuana possessed was greater than 100 pounds, the jury made the requisite findings that defendant acted with intent to aid, abet, and encourage the principal in the possession and distribution of some amount of marihuana and did so with knowledge that the principal was committing the underlying offense. Even if defendant did not know the precise amount of marihuana involved, by its verdict, the jury necessarily found that she knew of the presence of drugs, that the amount was large enough that its intended use was for distribution, and that by her actions, she intended to aid in the commission of the offense. Thus, because a *mens rea* element is not required in order to find a defendant, as a complicitor, a special offender under § 18–18–407(1)(e), once the findings of guilt of the underlying offense and the existence of the enhancement factor were made, the court was required to impose an increased sentence.

## II.

Defendant also contends that her conviction for possession of more than 28 grams of cocaine cannot stand because, under the version of § 18–18–405(3)(a), C.R.S.1998, in effect at the time, an accused must knowingly possess more than 28 grams of cocaine. Because, she argues, the trial court failed to instruct the jury that it had to find whether defendant knew that the amount of cocaine possessed was 28 grams or greater, structural error occurred. Because we conclude that knowledge of the amount of cocaine possessed is not an element of the offense, the court's omission of such instruction cannot be structural error.

Rather, because defendant did not object to the instruction given or the jury verdict form, we review this contention for plain error. *See Woertman v. People*, 804 P.2d 188 (Colo.1991) (plain error is that which so undermines fundamental fairness of trial as to cast doubt on the reliability of a defendant's conviction).

Under the statute in effect at the time defendant was charged:

> [A]ny person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly manufacturing, dispensing, selling, distributing, possessing, or possessing with intent to manufacture, dispense, sell, or distribute, or inducing, attempting to induce, or conspiring with one or more other persons, to manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute:
>
> (I) twenty-eight grams or more of any material, compound, mixture, or preparation which contains cocaine ... shall be sentenced to the department of corrections for at least the minimum term of incarceration in the presumptive range provided for such offense in section 18–1–105(1)(a).

Colo. Sess. Laws 1997, ch. 264, § 18–18–405(3)(a) at 1542.

Section 18–18–405(3)(a), in itself, does not make possession unlawful and, therefore, does not set forth an offense. Instead, by referencing § 18–18–405(2)(a), C.R.S.1998, which, in turn, incorporates § 18–18–405(1)(a), C.R.S.1998, it describes the action to be taken by a court in sentencing an offender after he or she has been convicted of possession. It is § 18–18–405(1)(a) which sets forth the elements of the offense of distribution, manufacture, dispensing, sale, or possession and makes it unlawful to do so.

Thus, § 18–18–405(3)(a), in repeating the language of § 18–18–405(1)(a), simply specifies to which offense the sentence enhancer is to be applied. Under § 18–18–405(3)(a), once a determination of guilt has been made, then, if the amount was 28 grams or more, the court is required to sentence an offender to a minimum presumptive sentence. As discussed, a finding of the offender's knowledge of the precise amount possessed is not required, whether the person is a principal or a complicitor.

Here, the trial court instructed the jury according to the language of § 18–18–405(1)(a) which required the jury to find that defendant knowingly possessed cocaine. The jury also was instructed to determine wheth-

er the prosecution had established beyond a reasonable doubt that the amount of the cocaine was 28 or more grams. This the jury did, and thus, we perceive no error.

### III.

Defendant contends that the evidence was insufficient to support her conviction of possession of marihuana with intent to distribute as a complicitor. We disagree.

### A.

Defendant argues that, in order to be found guilty of possession of marihuana with intent to distribute, the jury should have been required to find by special verdict that defendant aided and abetted the offense with the specific intent to distribute marihuana. Therefore, she argues, the court erred in instructing the jury only that defendant must have acted with intent to facilitate the commission of the offense.

■ Under a complicity theory of liability, the prosecution is required to prove a dual mental state, that the defendant possessed the requisite *mens rea* for the underlying crime, here knowing possession with intent to distribute, and that the defendant intended her conduct to promote or facilitate the commission of the underlying offense. *Bogdanov v. People, supra.*

■ Here, the trial court instructed the jury that, in order to find defendant guilty as a complicitor:

1. A crime must have been committed.

2. Another person must have committed the crime.

3. The defendant must have had knowledge that the other person intended to commit the crime.

4. The defendant must have had the intent to promote or facilitate the commission of the crime.

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission of the crime.

Because the prosecution argued that defendant did not personally commit any part of the underlying offense, the court's instruc-tions properly required the jury to determine that defendant intended to aid the whole offense committed by another.

■ By its finding, the jury necessarily found that defendant intended the commission of the offense, *i.e.*, distribution, and a special jury finding on this issue was not required. *See Bogdanov v. People, supra* (instruction which properly informs jury of requisite mental state is sufficient).

### B.

Defendant argues that, even if a special finding was not required, the evidence was insufficient to support her conviction for possession of marihuana with intent to distribute. We do not agree.

■ In considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether the evidence, viewed as a whole and in a light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Christian*, 632 P.2d 1031 (Colo.1981).

■ Here, evidence was presented that defendant, her boyfriend, and his brother lived in the house where the drugs were found. Defendant's name was on the lease and bills were in her name at that address. There was conflicting evidence that defendant admitted knowing that drugs were on the premises. An expert witness testified as to the use of other items, certain of which belonged to defendant, seized from the house, by persons involved in drug distribution.

Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable factfinder could find defendant guilty beyond a reasonable doubt. *See People v. Del Alamo*, 624 P.2d 1304 (Colo.1981) (amount of drugs discovered and method of packaging is evidence of intent to distribute); *People v. Arnold*, 186 Colo. 372, 527 P.2d 806 (1974) (that drugs were found in defendant's apartment was sufficient to support conviction for possession).

## IV.

Lastly, defendant contends that repeated instances of prosecutorial misconduct during the trial were so prejudicial as to warrant a new trial. We disagree.

### A.

■ Defendant argues that the prosecutor's cross-examination of a witness improperly misled the jury concerning defendant's potential sentence if convicted. We disagree.

The court sustained defendant's objection and instructed the jury to disregard the prosecutor's question and the witness' answer. In the absence of evidence to the contrary, we presume the jury heard and heeded the court's instruction, and thus, we perceive no error. *See People v. Orona*, 907 P.2d 659 (Colo.App.1995).

### B.

We also disagree with defendant's argument that the prosecutor improperly threatened a witness with prosecution to prevent exculpatory testimony and elicited testimony inculpatory to defendant knowing that the witness would invoke his privilege against self-incrimination.

#### 1.

■ Contrary to defendant's contention, the record shows that counsel for the witness, not the prosecutor, told the court that the prosecution would do "everything in its power" to prosecute him. The prosecutor did agree that the People believed they would not be barred from prosecuting the witness on a charge of cocaine possession because such charge had not been filed against him previously. In our view, such statement does not constitute a threat of prosecution.

#### 2.

We do not agree with defendant that the prosecutor's question of this witness, "Were you dealing drugs?," was an attempt improperly to inculpate defendant.

■ Defendant did not object to this question. The witness' counsel informed the court after the witness answered the question that the witness would assert his privilege against self-incrimination if the questioning went into further detail. The prosecutor did not pursue the line of questioning.

Because the witness had been convicted of possession of marihuana with intent to distribute, and because the question asked about drugs in general, the question was not improper and did not intrude in an area restricted by the trial court. Thus, we perceive no misconduct by the prosecutor.

### C.

Defendant also argues that, during rebuttal argument, the prosecutor engaged in improper conjecture, stated his personal belief concerning defendant's guilt, referred to facts not in evidence, and mischaracterized defendant's testimony. We conclude that the statements in the prosecutor's rebuttal argument were not so egregious as to warrant a new trial.

■ With the exception of one statement, the statements which defendant now challenges were not objected to at trial. Thus, we review those statements for plain error. *See Woertman v. People, supra.*

■ A contention that the prosecutor engaged in improper argument must be evaluated in the context of the argument as a whole and in light of the evidence. *People v. Marquantte*, 923 P.2d 180 (Colo.App.1995).

■ The scope of final argument rests in the discretion of the trial court. Its rulings concerning such will not be disturbed on review absent an abuse of discretion resulting in prejudice and a denial of justice. *People v. Valdez*, 725 P.2d 29 (Colo.App.1986).

#### 1.

The prosecutor, in rebuttal argument, stated that defendant consented to the search of her house because, as an employee of the Colorado State Patrol, she knew that if she did not, the officers would secure the property and obtain a search warrant. Defense counsel objected that defendant would not

have this knowledge because she did clerical work.

The trial court overruled defendant's objection on the ground that she had opened the door by arguing that she would not have consented to the search if she had known drugs were in the house and that her clerical position and experience working undercover were sufficient to allow the prosecutor's inferences. The court also instructed the jurors that, while counsel could draw inferences from the evidence, they were free to accept or reject such inferences.

A prosecutor is allowed considerable latitude in responding to the argument made by opposing counsel. *People v. Marquantte, supra.* The prosecution also is allowed to argue reasonable inferences from the record. *People v. Walters,* 821 P.2d 887 (Colo.App.1991).

Here, defendant testified that she had worked for the State Patrol for about three years and had done some undercover work for the department. Thus, the inference that defendant knew search procedures was not unreasonable and the prosecutor's statement is not reversible error. *See People v. MacFarland,* 189 Colo. 363, 540 P.2d 1073 (1975).

### 2.

Defendant argues that the prosecutor's statements characterizing her defense as "blowing smoke" and "smoke" were an improper comment on her counsel's belief in the merits of her case. We do not agree.

Although it is improper for a prosecutor to assert that opposing counsel knows that the accused's case is not meritorious, *People v. Jones,* 832 P.2d 1036 (Colo.App. 1991), such is not the case here. Rather, the prosecution used this example to state that the evidence in support of defendant's innocence lacked substance. Thus, we perceive no error.

### 3.

Defendant also objects to the prosecutor's statement, "I don't know how much

she makes. I do know she aided, abetted, she advised or she encouraged, either or."

While we disapprove of the prosecutor's statement "I do know," given its brevity, the context of the argument, and the lack of contemporaneous objection, we conclude that this statement is not so egregious as to constitute plain error. *See People v. Plotner,* 188 Colo. 297, 534 P.2d 791 (1975) (statements as to personal opinion of guilt were improper but not plain error).

### 4.

Defendant also argues that the prosecutor's statement that defendant "liked the money" is improper conjecture and innuendo. However, evidence, although in conflict, was presented that large amounts of money were found in defendant's house and that she was living beyond her means. Thus, it was not improper for the prosecutor to urge the interpretation that defendant's motive for aiding and abetting the drug distribution was because of the money she could receive. *See People v. Walters, supra.*

### 5.

Defendant lastly argues that the prosecutor mischaracterized her testimony by telling the jury that she had said she would not call the police if she knew others had brought drugs in her house because she "wouldn't want to get them in trouble."

Although the prosecutor did misquote defendant, again there was no objection, and, in the context of her testimony, the prosecutor did not mischaracterize the substance of what defendant said, *i.e.,* that she would not call the police if she knew that others had brought drugs into her house because she did "not want trouble."

### 6.

Contrary to defendant's argument that reversal still is required by the cumulative effect of these statements, because the statements, alone or as a whole, did not substantially prejudice her right to a fair trial, we conclude that reversal is not required. *See*

*People v. Fears,* 962 P.2d 272 (Colo.App. 1997).

The judgment is affirmed.

Judge METZGER and Judge CRISWELL, concur.