23CA1545 Peo v Duran 03-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1545
Douglas County District Court No. 22CR89
Honorable Ryan J. Stuart, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony D. Duran,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Zach W. Fitzgerald, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Anthony D. Duran, appeals the district court's judgment of conviction entered on a jury verdict finding him guilty of felony menacing, false imprisonment, and criminal mischief. We affirm.

## I.    Background

¶ 2    Duran and his girlfriend, Heather Ruebush, were staying with Ruebush's mother, Katrina Tellus. Duran and Ruebush were making dinner and got into an argument. Tellus was on the phone with her therapist when she heard Ruebush call for her. When Tellus walked into the kitchen, she saw that Duran had pinned Ruebush by her neck in a corner. Tellus asked Ruebush and Duran to be quiet while she was on her call, which she continued. Ruebush testified that she told Tellus that she didn't want Duran there and stepped out onto the balcony to smoke a cigarette.

¶ 3    When Ruebush and Duran continued to make a "ruckus" in the living room, Tellus told Duran he had two choices — to leave or Tellus would call police. At trial, Tellus testified that Duran then picked up a knife and started to chase her. While chasing Tellus, Duran said, "I'm going to kill you, fucking bitch." Tellus demonstrated at trial how Duran was holding the knife, which the

1

prosecution described as "the witness ha[ving] her elbow up[,] pointing [in an] upwards and downwards fashion."

¶ 4     Ruebush testified that she didn't see the chase occur because she was smoking a cigarette on the balcony but that she heard Duran chasing Tellus.  Tellus went to her room and called the police, then went into the bathroom and locked the door.  Duran then started kicking the bathroom door.  When Tellus no longer heard Duran, she grabbed her dog and purse and ran out of the apartment.

¶ 5     Shortly after Tellus left, police arrived at the apartment. According to officer testimony, Duran was still holding the knife; appeared distressed; and told police that he "didn't threaten anybody inside of the apartment, although [he'd] been threatening [him]self."  After communicating with officers for about forty minutes, Duran agreed to drop the knife and to peacefully walk down the stairs.  After Duran did so, he was taken into custody.

¶ 6     Duran was charged with felony menacing under section 18-3-206, C.R.S. 2025; false imprisonment under section 18-3-303(2)(a)(I), C.R.S. 2025; violation of a protection order under section 18-6-803.5(1)(a), C.R.S. 2025; and criminal mischief under

2

section 18-4-501(1), (4)(a), C.R.S. 2025.  After a two-day trial,[1] a jury found Duran guilty of felony menacing, false imprisonment, and criminal mischief.  The court sentenced Duran to a controlling term of thirty-six months in the custody of the Department of Corrections followed by two years of parole.

## II.    Analysis

¶ 7     Duran contends that (1) the 2022 instruction is unconstitutional; (2) the district court erred by using two different descriptions of proof beyond a reasonable doubt from two different model instructions, one from the pre-2022 model jury instruction (old instruction) and the other from the 2022 model jury instruction (2022 instruction); (3) the prosecutor engaged in prosecutorial misconduct during voir dire and closing argument; and (4) the errors cumulatively require reversal.  We disagree with each contention.

---

[1] Duran's trial started on a Tuesday but, because of scheduling conflicts, resumed on a Friday.  At the close of trial, the prosecution moved for dismissal of the violation of a protection order charge, which the court granted.

A.    Reasonable Doubt Jury Instructions

¶ 8    Duran first contends that the 2022 instruction is unconstitutional and that we must therefore reverse his convictions.  Next, he contends that the court erred by giving both the old and 2022 reasonable doubt instructions because doing so confused the jury, lowered the prosecution's burden of proof, and created "a substantial risk that the jury overestimated the latitude it had when applying" the standard for beyond a reasonable doubt.  We disagree with both contentions.

1.    Additional Facts

¶ 9    At the beginning of voir dire, the court discussed the presumption of innocence and the prosecution's burden to prove its case beyond a reasonable doubt, using the old instruction's language:

> Duran is presumed innocent.  Therefore, the [p]rosecution has the burden of proving the charges beyond a reasonable doubt.
>
> . . . .
>
> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence or the lack of evidence in the case.  It is a doubt which is not a vague, speculative, or imaginary doubt but such a doubt as would

4

cause reasonable people to hesitate to act in matters of importance to themselves.

¶ 10     The court then asked the jury if there was anyone who did not understand "these principles."  Although the trial transcript doesn't indicate whether any juror raised a hand, there were no comments in response.

¶ 11     The prosecutor then asked jurors about the reasonable doubt standard during voir dire.  The prosecutor used the wording from the 2022 instruction, saying,

> the Court is going to tell you that it's our burden to prove the charges beyond a reasonable doubt.  He's going to read you an instruction that tells you that that means you're more than highly — it's more than highly probable, you're firmly convinced, but not absolute certainty.  Okay?  Only if there is a real possibility the [d]efendant didn't commit the crime, then (indiscernible).

¶ 12     After the prosecution rested its case, the court asked the attorneys whether they needed time to confer on or make changes to the jury instructions.  Defense counsel responded as follows:

> Your Honor, I will tell the Court that I am pretty much in agreement.  I mean, I don't have any objection.  There's some that need to be pulled just based upon there wasn't any limited evidence, there wasn't [sic] any felony convictions, things like that.  But, otherwise,

I — I believe that all the elementals are correct and that we have the correct definitions.

Three days later, the court again asked the attorneys if they had any issues with the jury instructions. Both sides verbally approved the instructions, and the court gave the jury the 2022 instruction:

> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of [Duran's] guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that [Duran] is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.
>
> After considering all of the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you will find [Duran] guilty of that crime.
>
> After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you will find [Duran] not guilty of that crime.

### 2. Standard of Review and Applicable Law

¶ 13 We review de novo whether the "trial court accurately instructed the jury on the law." *Tibbels v. People*, 2022 CO 1, ¶ 22. We also review de novo whether an instruction impermissibly lowered the prosecution's burden of proof. *People v. Schlehuber*, 2025 COA 50, ¶ 15.

¶ 14 A court must properly instruct the jury on the controlling law, *People v. Melara*, 2025 COA 48, ¶ 16, but as long as the instructions properly inform the jury of the law, the trial court has broad discretion to determine their form and style, *McDonald v. People*, 2021 CO 64, ¶ 54. We therefore review a trial court's decision to give a particular jury instruction for an abuse of discretion. *Id.* A court abuses its discretion when it acts in a manner that is manifestly arbitrary, unreasonable, or unfair or when it misconstrues or misapplies the law. *Melara*, ¶ 16.

¶ 15 "[T]he instructions, taken as a whole, must correctly convey the concept of reasonable doubt to the jury." *Tibbels*, ¶ 35. "[A]s long as a trial court instructs the jury that the defendant's guilt must be proved beyond a reasonable doubt, the Constitution does not require that any particular words be used in advising the jury of

7

the prosecution's burden of proof." *Id.* However, a trial court's instructions that lower the burden of proof below the reasonable doubt standard "constitute[] structural error and require[] automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8.

¶ 16    When reviewing jury instructions, we consider whether the instructions accurately conveyed the law and whether the instructions were confusing or could have misled the jury. *Garcia v. People*, 2022 CO 6, ¶ 16. "[W]e presume that juries understand and heed jury instructions." *People v. Dunlap*, 975 P.2d 723, 744 (Colo. 1999).

¶ 17    Reviewing courts apply a functional test to determine whether a court incorrectly instructed the jury on the reasonable doubt standard. *Pettigrew v. People*, 2022 CO 2, ¶ 36. The functional test requires us to "ask whether there is a reasonable likelihood that the jury understood the court's statements, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* This test applies to statements outside of the formal instructions. *Tibbels*, ¶ 43.

### 3.    2022 Reasonable Doubt Instruction

¶ 18    Duran argues that the 2022 instruction is unconstitutional because it lowers the prosecution's burden of proof, shifts the burden of proof, and provides incompatible definitions of reasonable doubt.  We are unpersuaded by his assertions.

¶ 19    First, Duran contends that the phrase "firmly convinced" as used in the 2022 instruction lowers the prosecution's burden of proof and invites the jury to convict on guilt generally, rather than to weigh whether the prosecution proved each element of the charges beyond a reasonable doubt.

¶ 20    In *Schlehuber,* a division of our court rejected a similar argument.  The appellant in that case argued that "'firmly convinced' [wa]s more akin to the lesser standard of clear and convincing evidence than to proof beyond a reasonable doubt." *Schlehuber*, ¶ 32.  The division disagreed, pointing out that the 2022 instruction "require[d] *more* than proof that something [wa]s highly probable." *Id.* (quoting COLJI-Crim. E:03 (2025)); *see People v. Berumen*, 2025 COA 93, ¶ 25 ("[E]ven assuming that a jury in a criminal case somehow becomes aware of how this civil standard of proof is defined under Colorado law, the 'firmly convinced' language

9

can't be confused with the lower clear and convincing evidence standard."). The *Schlehuber* division noted that federal courts have consistently approved the phrase "firmly convinced" as an accurate expression of the reasonable doubt standard that doesn't lessen the prosecution's burden. *See, e.g., United States v. Petty*, 856 F.3d 1306, 1310 (10th Cir. 2017) ("[T]he court's 'firmly convinced' formulation of the reasonable doubt standard did not understate the degree of certainty a jury must reach to find a criminal defendant guilty."); *United States v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir. 1992) ("Considering the instruction given as a whole, the use of the 'firmly convinced' language did not indicate to the jury that the prosecutor had a lesser burden than that implied by the use of the term 'reasonable doubt' standing alone."); *see also Berumen*, ¶ 22 ("While some of the language included in the 2022 model instruction has faced criticism in some jurisdictions, it has been accepted by divisions of this court, with support from federal courts."). We agree with *Schlehuber* and *Berumen*.

¶ 21     Second, Duran contends that by requiring the jury to weigh whether there was a "real possibility that [Duran] [wa]s not guilty," the 2022 instruction incorrectly invited the jury to consider whether

10

he presented sufficient evidence to disprove the prosecution's case, thereby improperly shifting the burden.  But as the *Schlehuber* division and federal courts examining the language have held, the phrase doesn't shift the burden, nor does it "suggest[] that the defendant must be 'the source of the "real possibility"'" of innocence.  *Schlehuber*, ¶ 34 (quoting *United States v. Taylor*, 997 F.2d 1551, 1557 (D.C. Cir. 1993)).  Rather, the phrase "real possibility" describes the threshold the prosecution must overcome to prove the charges beyond a reasonable doubt and "the consequences if a reasonable doubt does arise" and the prosecution fails to meet its burden.  *Taylor*, 997 F.2d at 1557; *see also* COLJI-Crim. E:03 ("But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt."); *Schlehuber*, ¶ 32 ("And it requires the prosecution to dispel any 'real possibility' the defendant is not guilty, not just a serious or substantial one.").

¶ 22     Third, Duran asserts that the 2022 instruction allows a jury to convict under two distinct yet incompatible definitions of reasonable doubt.  Duran contends that the jury may convict the defendant if

11

it's "firmly convinced" of his guilt, and it may also convict if it doesn't believe there's a "real possibility" that he's not guilty.

¶ 23     As *Schlehuber* explained, however, the "juxtaposition" between these two phrases "has been consistently approved by federal courts as an accurate expression of the reasonable doubt standard."  *Schlehuber*, ¶ 30; *see United States v. Conway*, 73 F.3d 975, 980 (10th Cir. 1995) ("We agree that the 'firmly convinced' language, juxtaposed with the insistence that a jury must acquit in the presence of a 'real possibility' that the defendant is not guilty, is a correct and comprehensible statement of the reasonable doubt standard."); *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) ("The 'firmly convinced' standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a 'real possibility' that the defendant is innocent."). Simply put, the phrases "work together to give the jury a complete picture of the reasonable doubt standard."  *Schlehuber*, ¶ 33.  Here, the jury could have either been "firmly convinced" of Duran's guilt, or it could have thought "there [wa]s a real possibility" that Duran is wasn't guilty.  *Id.*  It determined the former.

¶ 24    We conclude that the 2022 instruction does not unconstitutionally lower the prosecution's burden of proof or shift the burden of proof to the defendant.  Therefore, we discern no error with the district court's instruction.

### 4.    Use of the 2022 Instruction's and the Old Instruction's Language

¶ 25    Duran argues that the court's use of both the 2022 and old instructions encouraged the jury to use a wide variety of standards for beyond a reasonable doubt, lowering the prosecution's burden and confusing the jury.  We disagree for a few reasons.

¶ 26    First, the old instruction has been widely approved and upheld.  *See People v. Alvarado-Juarez*, 252 P.3d 1135, 1137 (Colo. App. 2010) ("Colorado's [old] instruction accurately describes proof beyond a reasonable doubt."); *see Johnson*, ¶ 16 (holding that the court had properly instructed the jury on reasonable doubt when, in context of the entire record, the court used the exact language from the model jury instructions and properly instructed the jury on the prosecution's burden and presumption of innocence); *see also Tibbels*, ¶ 25 (urging courts to adhere to "long-established [model] instructions").

¶ 27    Second, while Duran contends the use of two instructions created an "obfuscating thicket," he fails to explain how the jury was confused by the two instructions. *See People v. Phillips*, 91 P.3d 476, 484 (Colo. App. 2004) (The presumption that a jury understood and heeded instructions "is rebutted where a jury affirmatively indicates it has a fundamental misunderstanding of an instruction it was given."). Rather, when counsel asked jurors during voir dire if they understood different aspects of the reasonable doubt standard, they consistently indicated that they did. We therefore presume that the jury understood the reasonable doubt instructions provided by the court.

¶ 28    Third, the district court's reference to the old instruction's reasonable doubt standard occurred once during voir dire. Its reference to the 2022 instruction's reasonable doubt standard occurred three days later after the presentation of the evidence. *See Johnson,* ¶ 18 (trial court did not err when it verbally provided an incorrect reasonable doubt instruction only once, didn't mention or reference the instruction again, and also gave a proper instruction).

¶ 29    Because both the old and 2022 instructions' reasonable doubt standards are correct and have been approved by courts, and there is no indication that the jury was confused, we discern no error.

### B.    Prosecutorial Misconduct

¶ 30    Duran contends the prosecutor committed prosecutorial misconduct by (1) lowering the prosecution's burden by discussing the 2022 instruction's reasonable doubt standard after the court read the jury the old instruction during voir dire; (2) shifting the burden to Duran; (3) denigrating the defense; (4) creating an inference of guilt; and (5) encouraging the jury to convict based on sympathy.  We disagree with each contention.

### 1.    Standard of Review and Applicable Law

¶ 31    We apply a two-step analysis to claims of prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether, based on the totality of the circumstances, the prosecutor's conduct was improper.  *People v. Leyba*, 2019 COA 144, ¶ 55, *aff'd*, 2021 CO 54.  If the conduct was improper, we apply the appropriate standard of review to determine whether reversal is warranted.  *Id.*

¶ 32    We review unpreserved claims of prosecutorial misconduct for plain error. *Id.* (Duran concedes that his trial counsel didn't object to any of the statements at issue.) "Prosecutorial misconduct rarely constitutes plain error," *People v. Estes*, 2012 COA 41, ¶ 19, and only does when the conduct is "flagrantly, glaringly, or tremendously improper," *People v. Walker*, 2022 COA 15, ¶ 28 (quoting *People v. Dominguez-Castor*, 2020 COA 1, ¶ 86).

¶ 33    A prosecutor "may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance," so long as they do not "induce the jury to determine guilt on the basis of passion or prejudice," inject irrelevant issues, or seek to accomplish an improper purpose. *People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003). Nor may the prosecutor misstate the law. *People v. Van Meter*, 2018 COA 13, ¶ 24. A prosecutor's expression of personal opinions or knowledge or use of inflammatory comments or arguments that are calculated to mislead the jury or appeal to prejudices violates ethical boundaries established by the Colorado Supreme Court. *Domingo-Gomez v. People*, 125 P.3d 1043, 1048-49 (Colo. 2005).

16

## 2. Discussing the 2022 Instruction After the Court Discussed the Old Instruction

¶ 34    Duran argues that prosecutor lowered the prosecution's burden of proof by using language from the 2022 instruction after the court had used language from the old instruction during voir dire and by broadening the jury's understanding of reasonable doubt with the phrases "beyond a shadow of a doubt or beyond all doubt" and "absolute certainty." We disagree.

¶ 35    During voir dire, the prosecutor discussed the reasonable doubt standard with the prospective jurors, saying, "[The court] is going to read you an instruction that tells you that [beyond a reasonable doubt] means you're more than highly — it's more than highly probable, you're firmly convinced, but not absolute certainty." The court ultimately gave the jury the 2022 instruction defining reasonable doubt, which states that the term requires "more than proof that something is highly probable, but it does not require proof with absolute certainty." The prosecutor used the same standard as the court's formal written instructions and defined reasonable doubt in a manner that state and federal courts have determined to be correct statements of the law. *Cf. Van Meter*,

17

¶ 24 ("A prosecutor may not misstate the evidence or the law."). Thus, the prosecutor's use of 2022 instruction's language wasn't improper.

¶ 36    Duran also argues that the prosecutor broadened the jury's understanding of reasonable doubt during voir dire by calling attention to inapplicable standards. For instance, when addressing a prospective juror, the prosecutor said, "[S]ometimes the term [used is] beyond a shadow of a doubt or beyond all doubt. Does it make sense to you that my burden is beyond a reasonable doubt but not all doubt?" and "it's not absolute certainty. . . . Does that make sense to you?" But the prosecutor's use of the 2022 instruction's language and the statements comparing "beyond a reasonable doubt" to "beyond a shadow of a doubt," "beyond all doubt," and "absolute certainty" were not improper. *See People v. Knobee*, 2020 COA 7, ¶ 37 (recognizing there was nothing wrong with distinguishing the "beyond a reasonable doubt" standard from the phrase "beyond a shadow of a doubt").

3.    Prosecutor's Statements Regarding "Real Possibility"

¶ 37    Duran next contends that, during voir dire and closing, the prosecutor lowered the burden of proof and shifted it to the defense

18

by telling the jury that it could "only" acquit if there was a "real possibility" that Duran wasn't guilty.

### a. Standard of Review and Applicable Law

¶ 38 As mentioned above, we review unpreserved claims of prosecutorial misconduct for plain error. *Leyba*, ¶ 55. In determining whether prosecutorial misconduct constitutes plain error, we look to the totality of the circumstances, including "the exact language used, the nature of the misconduct, the surrounding context, and the strength of the other evidence of guilt." *Dominguez-Castor*, ¶ 86. Improper closing argument rises to the level of plain error "if the probable effect is a verdict based on bias and prejudice rather than on the relevant facts and applicable law." *People v. Conyac*, 2014 COA 8M, ¶ 130.

¶ 39 "[T]he prosecution cannot place upon a criminal defendant the burden of proving innocence," nor can it shift the burden to the defendant. *People v. Clark*, 214 P.3d 531, 540 (Colo. App. 2009), *aff'd on other grounds*, 232 P.3d 1287 (Colo. 2010). In determining whether the burden was shifted to a defendant, we "evaluate the strength of the prosecution's burden-shifting . . . comment in light of the entire record." *People v. Santana*, 255 P.3d 1126, 1131 (Colo.

19

2011).  We consider whether (1) the prosecutor intended to establish or argued that the defendant carries the burden; (2) the comments were a fair response to comments or questions by defense counsel; and (3) the jury was informed by counsel and the court about the presumption of innocence and the prosecution's burden.  *Id.* at 1131-32.

### b.    Analysis

¶ 40    The prosecutor told the jury during voir dire that the prosecution would fail to meet its burden "[o]nly if there [wa]s a real possibility [Duran] didn't commit the crime."  Duran argues that this statement improperly shifted the burden to him by asking the jury to assess whether Duran "didn't commit the crime" instead of determining whether the prosecution met its burden.  We aren't persuaded.

¶ 41    The record shows that the prosecutor repeatedly told the jury that the prosecution had the burden of proof and that the court would also instruct the jurors that the prosecution had the burden of proof beyond a reasonable doubt.  For instance, immediately before making the challenged statements, the prosecutor asked a prospective juror if it made sense that the burden was on the

prosecution. Likewise, the court told the jurors multiple times, both during voir dire and after the jury was impaneled, that Duran was presumed innocent and that the prosecution had the burden of proof. The court also clarified that Duran didn't have to prove his innocence, call witnesses, or produce evidence. In its written instructions at the close of the evidence, the court again instructed the jury on the presumption of innocence, including that Duran was presumed innocent and that the prosecution had the burden of proof. Accordingly, we conclude that the prosecutor's statement during voir dire didn't shift the burden to Duran because the prosecution and the court repeatedly conveyed that the prosecution had the burden.

¶ 42    Duran contends that the following statements, which the prosecutor made during closing argument, improperly described the reasonable doubt standard:

> As we talked about in voir dire, the burden is that you have to be — it's more than highly probable. You must be firmly convinced. But it does not require proof of absolute certainty, and we talked about that difference, right? Again, it's what leaves you firmly convinced of the [d]efendant's guilt and only if there's a real possibility can you acquit this defendant.

Although the prosecutor's statements didn't mirror the exact language of the 2022 instruction, there was no misconduct. The prosecutor's statement that reasonable doubt is "what leaves you firmly convinced of the [d]efendant's guilt and only if there is a real possibility can you acquit this defendant" followed the 2022 instruction's language that the jury could be firmly convinced of the defendant's guilt or believe there was a real possibility the defendant was not guilty, but not both. The court's instructions, which also tracked the 2022 instruction, provided, in relevant part, "But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt." COLJI-Crim. E:03. As discussed, this language didn't shift the burden to Duran and accurately stated the law. *See Schlehuber*, ¶ 34.

¶ 43    Even if the prosecutor misstated the law, however, there was no plain error for a few reasons. First, the prosecutor made the statement only once. Second, prior to the challenged comment, the prosecutor correctly defined reasonable doubt. The prosecutor returned to the reasonable doubt standard in her rebuttal closing argument when she referred to the 2022 instruction defining

22

reasonable doubt as "proof that leave[s] you firmly convinced of Duran's guilt. What does firmly convinced mean? It means there's not a real possibility." And third, the court's formal jury instructions properly conveyed the reasonable doubt standard using the correct "real possibility" language.

### 4. Denigration of the Defense

¶ 44 Duran contends that the prosecutor's comments regarding Snuffleupagus,[2] hypothetical about identification, and rebuttal closing argument denigrated the defense because the prosecutor primed the jurors to view Duran's case as "not real." We disagree.

### a. Applicable Law

¶ 45 A prosecutor may not use arguments that are calculated to denigrate defense counsel or imply that defense counsel's argument is not being asserted in good faith. *People v. Carter*, 2015 COA 24M-2, ¶ 70. A prosecutor may not assert that defense counsel knows that the defendant's case is not meritorious, *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App. 1999), *aff'd*, 43 P.3d 611

---

[2] Snuffleupagus is a fictional character on the children's show Sesame Street. *See* Sesame Workshop, *Snuffleupagus ("Snuffy")*, https://perma.cc/AL9A-BS36.

(Colo. 2001), but "[a p]rosecutor[] may 'suggest to the jury that defendant's theory . . . was so unlikely as to strain credibility,'" *People v. Herold*, 2024 COA 53, ¶ 97 (quoting *People v. Collins*, 250 P.3d 668, 678 (Colo. App. 2010)). "[A] prosecutor has considerable latitude in replying to opposing counsel's argument," *People v. Iversen*, 2013 COA 40, ¶ 37, and may argue "that the evidence in support of defendant's innocence lacked substance," *People v. Trujillo*, 2018 COA 12, ¶ 39 (quoting *Ramirez*, 997 P.2d at 1211).

b.     Analysis

¶ 46     Duran argues that the prosecutor's reference to Snuffleupagus primed the jury to view Duran's case as not real. After saying that the court would instruct the jury on the prosecution's burden and the "beyond a reasonable doubt" standard, the prosecutor had the following exchange with a prospective juror:

> [Prosecutor]: [Prospective Juror], can you think of something that's not real? Some words for something that's not real.
>
> [Prospective juror]: Yes.
>
> [Prosecutor]: What are those?
>
> [Prospective juror]: Snuffleupagus.
>
> [Prosecutor]: Okay. Snuffleupagus. Okay. And so —

24

The Court: Are you sure?

[Prosecutor]: — if the evidence was presented and they said, he didn't do it, it was Snuffleupagus, can you agree with me that that's probably not a real possibility he didn't do it (indiscernible)?

[Prospective juror]: Yes.

¶ 47    The prosecution then returned to this analogy during closing argument, saying,

> So what's real? We talked again about this in voir dire. It's not a maybe, not a what if, a possibility, it's possible, a Snuffleupagus . . . . It's unreal, it's fake, it's false, it's made up, or it's not supported by the evidence.

¶ 48    The prosecutor again returned to Snuffleupagus in rebuttal closing:

> Reasonable doubt also requires that the proof leave you firmly convinced of [Duran's] guilt. What does firmly convinced mean? It means that there's not a real possibility. [The other prosecutor] talked to you about what real possibility means.
>
> It's not something that's made up, not something that's speculative, not something that's imagined, it's not Snuffleupagus. It's not that [Tellus] didn't call 911 after the first bad action. It's not that [Ruebush] went outside to smoke after that initial fight had broken up. It's not that [Ruebush] makes no mention of seeing the stabbing motion that [Tellus] describes. It's not that [Ruebush]

25

> didn't think [Duran] was actually going to hurt them.

> And the reason that all of these things are not reasonable doubt that could lead you to acquit [Duran] is because they are not real possibilities he is not guilty.

¶ 49    The prosecutor's reference to Snuffleupagus (first mentioned by a prospective juror) during voir dire was used as a metaphor to illustrate the concept of a vague, speculative, or imaginary doubt that doesn't equate to reasonable doubt. While the prosecutor analogized Snuffleupagus again during closing argument to explain what was not a "real possibility" or what was "imagined" and "speculative," these statements didn't denigrate the defense. The analogy didn't discuss defense counsel or suggest that defense counsel's argument was asserted in bad faith. Rather, these statements were merely a response to the testimony defense counsel highlighted in closing argument and were, again, used as a rhetorical device. Even if, however, the comments were ambiguous or questionable, they weren't "flagrantly, glaringly, or tremendously improper." *Walker*, ¶ 28 (citation omitted).

¶ 50    Next, Duran challenges the prosecutor's statements used to flesh out the concept of beyond a reasonable doubt.

26

[Prosecutor]: How do I prove to you beyond a reasonable doubt that I am who I say I am?

[Prospective juror]: Through ID, passports —

[Prosecutor]: Okay.

[Prospective juror]: — recognition.

[Prosecutor]: Okay. So you want some documentation. [Prospective Juror], what else would you like to prove that I am who I say I am?

[Prospective juror]: Probably some other referrals, people that know you, things like that (indiscernible).

[Prosecutor]: Okay. [Prospective Juror], can I ever prove to you beyond all doubt that I am who I say I am? Beyond any doubt?

[Prospective juror]: No.

[Prosecutor]: Is it possible that maybe I faked the documents, faked some witnesses, maybe I'm an alien. Is that all possible?

[Prospective juror]: Yeah, it is.

[Prosecutor]: Is it reasonable?

[Prospective juror]: No.

[Prosecutor]: Does that make sense to you, [Prospective Juror], that you have to have a reasonable doubt? It has to be based on your reason and —

¶ 51    These statements did not address defense counsel or the

defense's theory of the case.  These statements — like the

Snuffleupagus statements — were rhetorical flourishes used to

discuss the concept of reasonable doubt and the prosecution's

burden of proof.

¶ 52    Finally, Duran challenges the prosecutor's statement that

"everything we just heard" and the questions asked during trial

were not elements that the prosecutor needed to prove beyond a

reasonable doubt.  During rebuttal closing the prosecutor made the

following statements:

> [A]s you heard the Judge tell you at the very
> beginning during jury selection, reasonable
> doubt applies to the elements of a crime.
>
> It's not a question about something else.  It's a
> question just about the list of things that I set
> out to prove to you and [that the other
> prosecutor] set out to prove to you at the
> beginning of this trial on Tuesday.  It's just
> about those pieces, and it's only those pieces
> that we need to prove to you beyond a
> reasonable doubt.
>
> So let's talk about those elements.  [The other
> prosecutor] already walked you through them.
> But, more importantly, let's talk about what is
> not an element.  And that's everything that
> [defense counsel] just stood up here before you
> and talked about.  That the questioning that

28

we heard during the evidence presentation on Tuesday was talking about. That is not an element. But we don't have any video of [Duran] kicking down the bathroom door that, hypothetically, that could have been caused on some other day.

. . . .

What makes more sense? That [Tellus] hated [Duran] so much that she kicked in her own door to frame him for putting her in fear for her life? Does it make more sense that [Duran] had that knife on him solely to inflict injuries on himself even though he sustained none? Does it make more sense that [Ruebush] came to court and made up a story that corroborates [Tellus's] account and the physical evidence?

Or does it make more sense that [Duran] got intensely angry because he was being asked to leave a place?

¶ 53    These statements, while addressing defense counsel's closing argument and line of questioning, didn't denigrate the defense. They addressed what the prosecution didn't have to prove. *See Allee*, 77 P.3d at 836 ("Because the prosecutor's brief comment [that the jury should not be distracted by defense counsel's 'tactics'] was made in the context of attempting to draw the jury's focus to relevant evidence and was not intended to denigrate opposing

counsel, we find no abuse of discretion in the trial court's [over]ruling" the objection to the comment.).

¶ 54 Moreover, these statements responded to defense counsel's closing argument. In closing, when discussing the altercation and Ruebush's testimony, defense counsel said,

> [Tellus] comes to the balcony and proceeds to grab [Ruebush] to use her as a human shield between her and [Duran], who's been chasing [Tellus] over — around the apartment with a knife raised, who moments ago had [Ruebush] cornered in the kitchen with his hand on her neck? Think about that. Does that make sense? That she's going to use her as a human shield?

¶ 55 The prosecutor's statements therefore were a direct response to the defense's closing argument regarding "what makes more sense" and focused the jurors on the elements that the prosecution was required to prove.

¶ 56 In sum, the prosecutor's statements during voir dire and closing didn't denigrate the defense.

5. Comment on the Right to Trial and Implication That Evidence Was Significant

¶ 57 Duran contends that the prosecutor committed misconduct when discussing Duran's right to trial by using an analogy that

30

created an inference of guilt and an inference that the evidence was overwhelming. We disagree.

### a. Applicable Law

¶ 58    The right to trial by jury is a paramount constitutional right guaranteed to criminal defendants. *People v. Evans*, 612 P.2d 1153, 1155 (Colo. App. 1980). A prosecutor may not make comments that "ha[ve] the effect of creating an inference of guilt by referenc[ing]" an individual's exercise of his right to a jury trial. *People v. Rodgers*, 756 P.2d 980, 983 (Colo. 1988) (quoting *People v. Ortega*, 597 P.2d 1034, 1036 (Colo. 1979)), *overruled on other grounds by*, *People v. Miller*, 113 P.3d 743 (Colo. 2005). Statements referencing a "screening" process are improper because they have "the potential to convey that the prosecution had additional inculpatory evidence unknown to the jury." *Domingo-Gomez*, 125 P.3d at 1052.

### b. Analysis

¶ 59    During voir dire, the prosecutor questioned prospective jurors using the following analogies:

> I'm really hungry. I go to the convenience
> store. I want a Snickers. That's my thing. I'm
> going in there. I grab a Snickers and walk out

that store.  Do I have the right to go to jury trial?

. . . .

I go to that convenience store.  I take that candy bar.  I walk out.  There's two officers there.  They see me with the candy bar in hand.  They see someone chasing after me saying, "She didn't pay.  She didn't pay."  Do I have the right to go to trial?

. . . .

[D]oes it makes sense to you in those same scenarios, no matter what the evidence is, no matter how weak or how strong it is, everybody has a right to go to trial?

. . . .

Let's say I'm on video, there's drone video, they bring out the SWAT team, everybody (indiscernible) I had that Snickers, I did not pay for it, I have no money on me, there's no way I was going to pay for it.  Do I still have the right to go to trial?

After each question, prospective jurors engaged and answered.

¶ 60      Duran argues that these statements improperly referenced a screening process or the prosecution's charging decision, but they didn't.  Nor did these comments convey to the jury that the prosecutor had personal knowledge about additional evidence.  Additionally, while the analogies discussed only situations where an

individual had clearly committed a crime, they didn't comment on Duran's right to a trial in a manner that inferred his guilt from exercising that right. *Cf. Rodgers*, 756 P.2d at 982 (The prosecutor's remarks impermissibly violated the defendant's constitutional right when the prosecutor said, "As far as attorneys, some attorneys at least, there is a feeling which I will share with you that . . . if you are guilty, you would want to request a jury because they just may not convict you and if you are innocent you never want to request a jury because they just might convict you.").

¶ 61     These statements instead reinforced the principle that everyone charged with a crime is entitled to a jury trial. Each juror who was asked about whether the hypothetical defendant in the analogy had a right to a trial said the defendant did. Unlike references to a screening process that hint that the prosecution has some additional knowledge, the analogy used by the prosecutor was unrelated to the case type or specific facts of the case and did not involve any of the parties to the case.

¶ 62     Accordingly, we conclude that the statements didn't improperly refer to a screening procedure or imply that the evidence against Duran was significant.

6. Encouraging the Jury to Convict Based on Sympathy

¶ 63  Duran contends that the prosecutor committed misconduct by encouraging the jury to convict based on sympathy. We disagree.

a. Applicable Law

¶ 64  "[A] prosecutor may not 'encourag[e] the jury to depart from its duty to decide the case on the evidence' by appealing to sympathy for the victim," *Leyba*, ¶ 58 (quoting *Dunlap*, 975 P.2d at 759), or by appealing to the jurors' emotions, *People in Interest of J.R.*, 2021 COA 81, ¶ 47.

b. Analysis

¶ 65  Duran argues that the prosecutor's statements during rebuttal closing argument, "[O]nly you, ladies and gentlemen, can hold the guilty accountable for their actions. I can't do it. The Judge can't do it. Only you can do it," encouraged the jury to convict him based on sympathy.

¶ 66  However, Duran does not develop his argument. Moreover, prior to making the challenged statements, the prosecutor reminded the jury that Duran was presumed innocent and that the jury had to give that presumption effect unless it was convinced of Duran's guilt beyond a reasonable doubt after considering the evidence. The

34

prosecutor's comments didn't urge the jury to convict Duran regardless of the evidence and solely for the sake of justice or community safety but, instead, led the jury to find Duran guilty based on the evidence presented at trial. *See People v. Tran*, 2020 COA 99, ¶ 68 (holding that the prosecutor's statement that the jury "need[ed] to hold [the defendant] accountable" was not improper because the statement was made immediately after the prosecutor argued that the evidence established guilt).

¶ 67    Accordingly, the prosecutor's statements were not improper.

## C.    Cumulative Error

¶ 68    We reverse for cumulative error when multiple errors collectively prejudiced a defendant's substantial rights and "numerous errors in the aggregate show the absence of a fair trial." *Howard-Walker v. People*, 2019 CO 69, ¶ 26.  For cumulative error to apply, numerous errors must have occurred. *People v. Daley*, 2021 COA 85, ¶ 141.

¶ 69    Because we have not identified multiple errors, the cumulative error doctrine does not apply.

## III.    Disposition

¶ 70    We affirm the judgment of conviction.

JUDGE J. JONES and JUDGE LUM concur.